**Arthur RUDNICK et al., Plaintiffs,**

v.

**FRANCHARD CORPORATION et al., Defendants.**

United States District Court
S. D. New York.
Jan. 29, 1965.

Stanley L. Siegel, New York City, for plaintiffs; Malchman & Klied, New York City, Irving Malchman, New York City, of counsel.

Kramer, Bandler & Labaton, New York City, for defendant Morris Cohon & Co., Sidney Kramer and Edward Labaton, New York City, of counsel.

METZNER, District Judge.

Plaintiffs seek relief for alleged violations of the Securities Act of 1933 and the Securities Exchange Act of 1934. One of the defendants, Morris Cohon & Co. (Cohon), moves for summary judgment pursuant to F.R.Civ.P. 56.

This case has been assigned to me for all purposes pursuant to rule 2 of the General Rules of this court. It is to be tried to the court without a jury.

This is a spurious class action (F.R. Civ.P. 23(a) (3)) brought by purchasers of stock in Glickman Corp. (Glickman), now known as Franchard Corp.

The plaintiffs are all members of the same family. They allege that there were two separate offerings of Glickman stock and in connection therewith registration statements were filed. The first of these became effective on October 12th, 1960, and the second, about a year later, on October 2nd, 1961. It is alleged that these statements contained untrue statements of material facts or omitted to state material facts necessary to make the statements therein not misleading.

Plaintiffs purchased their stock under and as part of the second offering on October 2nd, 1961, the effective date of the registration statement. The sale was effected by a representative of defendant Hirsch & Co., which was a principal underwriter for this second offering. Plaintiff Arthur Rudnick made an additional purchase of stock on the open market on December 5th, 1962.

Cohon was the principal underwriter of the first offering of October 12th, 1960, but was not involved in any way with the second offering.

The complaint contains five counts, each claiming relief under various sections of the above named statutes. The sections and the cases thereunder require certain relationships before relief can be granted. On the argument of the motion, the attorney for plaintiffs admitted that the only valid ground for relief against the moving defendant was count 1, which is predicated on alleged violations of section 11 of the Securities Act of 1933 (15 U.S.C. § 77k). In view of this concession with regard to the sections of the statutes relied on for the second (Securities Act of 1933, § 12(1), 15 U.S.C. § 77l(1)), third (§ 12(2), § 77l(2)), fourth (§ 17(a) (2), § 77q(a) (2)), and fifth counts (Securities Exchange Act of 1934 § 10(b), 15 U.S.C. § 78j(b), rule 10(b) (5) of the Securities and Exchange Comm'n, 17 C.F.R. § 240.-10b–5 (1964)), summary judgment must be granted to Cohon on such counts.

Section 11(a) (5) provides that, if any registration statement omits a material fact necessary to make statements therein not misleading, any person acquiring such security may sue every underwriter of such security. In addition, the section provides that, if a person acquires the security after the issuer has made available an earnings statement covering a period of at least twelve months beginning after the effective date of the registration statement, recovery by the purchaser shall be conditioned on proof that he acquired the security relying upon the registration statement, and not knowing of the omission, "but such reliance may

be established without proof of the reading of the registration statement by such person."

Defendant Cohon concedes, as it must for the purpose of this motion, "the accuracy of the allegations regarding the falsity and deficiencies in the two registration statements and prospectuses."

Up to and including the time of the filing of the complaint, none of the plaintiffs had seen or read the prospectus which formed a part of the first registration. Nor had any of them ever had any contact with or communication from Cohon or any other underwriter of the first registration.

Arthur Rudnick has testified in his deposition that he purchased the stock as a result of a conversation with his broker at Hirsch & Co., a man through whom he had regularly conducted quite a bit of business over a long period of time. This broker told him that Glickman was making a public offering, that Hirsch & Co. was one of the underwriters, that he thought the stock was a good buy, and he sent Rudnick a copy of the prospectus. This was the first time Rudnick knew of the Glickman Corp. He read that prospectus and testified that he probably discussed it with his broker. He learned of the existence of the first offering as a result of reading the second prospectus, but, as indicated above, he never read the first prospectus. He came to the conclusion that the stock would be a good investment, and he relied on the "reputation, integrity and ability of Louis J. Glickman." His knowledge of Louis J. Glickman came through what he had read in newspapers about real estate syndications. On the advice of Arthur Rudnick, the remaining plaintiffs purchased their stock.

Subsequently, over a year later, on December 5th, 1962, Arthur Rudnick purchased an additional block of Glickman stock because he wanted to average down the cost of his stock, the price of which had fallen since his original purchase. He consulted no one about this purchase. Between the first purchase

and the second purchase, Arthur Rudnick read the monthly bulletins and an annual financial statement of Glickman that covered a full twelve-month period subsequent to the offering of October 1961.

▇▇ With the above facts in mind, let us examine first the stock purchases on October 2nd, 1961. It is clear that persons who bought shares as part of the second underwriting do not qualify under the language of section 11 for recovery against an underwriter identified only with the first offering. By its terms the section provides for relief only for persons who acquire the security with which a defendant was connected.

> "A suit under § 11 of the 1933 Act * * * may be maintained only by one who comes within a narrow class of persons i. e. those who purchase securities that are the direct subject of the prospectus and registration statement (here the purchasers of preferred stock)." Fischman v. Raytheon Mfg. Co., 188 F.2d 783, 786 (2d Cir. 1951).

It is of no significance that in Fischman one class was preferred and one was common, while here both are common. In regard to direct purchasers in the second offering the identification of their securities is as clear as if they had bought a different class of shares. Since the purchases were made specifically of stock covered by the second underwriting, I do not have to reach the question of the rights of a purchaser in the "after" or "open" market against the underwriter of an issue. The original purchases by

these plaintiffs do not come within that category.

The open market purchase by Arthur Rudnick raises the question whether such a purchaser can sue persons connected solely with the first offering. Assuming this can be done, there is the question of the impact of the issuance of the intervening financial statement which plaintiff read.

▇▇ Under the terms of section 11(a), in order for Arthur Rudnick to recover on this claim, it would be necessary for him to prove that he relied upon the first registration statement.[1] Reliance may be established without proof that he actually read the statement. Reliance could be shown if Rudnick relied on conversations with persons who knew of the contents of the statement and based their opinions on its contents, or if he read articles in newspapers or financial periodicals of like import. But Rudnick has testified that he made such purchase a year after the original purchase, when the price of the stock had dropped drastically, and he wanted to average down the cost of his holdings. There is no indication of "indirect" reliance. The court need not comment on the wisdom of such procedure except to relate it to the motivation of a person with a large portfolio, admittedly an active trader in securities.

There is no liability on the part of Morris Cohon & Co. to any of the plaintiffs under section 11 of the 1933 Act, and therefore summary judgment must also be granted on count 1.

Motion granted. So ordered.

---

1. When § 11(a) was amended in 1934 to place the burden on the purchaser to show that he relied on the registration statement if an intervening financial statement had been issued, the basis of the provision was predicated on the fact "that in all likelihood the purchase and price of the security purchased after publication of such an earning statement will be predicated on that statement rather than on the information disclosed upon registration." H.R.Rep. No. 1838, 73d Cong., 2d Sess. 41 (1934).