Adrienne C. EMMI, on behalf of herself and on behalf of others similarly situated, Plaintiff,

v.

FIRST–MANUFACTURERS NATIONAL BANK OF LEWISTON AND AUBURN, et al., Defendants.

Civ. No. 12–72.

United States District Court, D. Maine, S. D.

Dec. 30, 1971.

Jack H. Simmons, Robert A. Laskoff, Paul A. Cote, Lewiston, Me., for plaintiff.

Robert J. Hallisey, Francis H. Fox, Joseph F. Hunt III, Peter M. Saparoff, Joseph P. Rooney, Boston, Mass., Charles H. Abbott, Lewiston, Me., for defendants.

## OPINION AND ORDER OF THE COURT

GIGNOUX, District Judge.

This action arises under the Securities Act of 1933 ("The Securities Act"), the Securities Act of 1934 ("The Exchange Act"), and the Maine Blue Sky Law. Plaintiff Adrienne C. Emmi is a citizen of the State of Maine, formerly a stockholder of defendant First-Manufacturers National Bank of Lewiston and Auburn ("First Bank"), and presently a stockholder of defendant Northeastern Bank-

shares Association ("The Association"). First Bank is a national bank with its principal place of business at Lewiston, Maine. The Association is a Maine bank holding company with its principal place of business at Lewiston. The individual defendants are all citizens of Maine and at times relevant to this litigation were all officers and/or directors of one, or both, of the corporate defendants. Presently before the Court are defendants' motions for summary judgment and defendants' motions to dismiss, or in the alternative to strike portions of, the Complaint.

## I

## THE COMPLAINT

The Complaint was filed March 9, 1971, shortly after the complaint was filed in this Court in Dyer v. Eastern Trust and Banking Co., et al, 336 F.Supp. 890 (*"Dyer"*). It is substantially a "Chinese copy" of those portions of the *Dyer* complaint relating to the 1970 acquisition by the Association, in a stock-for-stock exchange, of shares of stock in First Bank, The Peoples National Bank of Farmington, Maine ("Peoples Bank") and Westbrook Trust Company of Westbrook, Maine ("Westbrook Trust"), ("The 1970 Acquisitions"). The transactions upon which the present Complaint is based are described in the opinion filed by the Court this date in *Dyer;* they will not again be set forth here. Plaintiff alleges that prior to the 1970 Acquisitions she was the owner of 507 shares of common stock of First Bank and that at the time of the 1970 Acquisitions she exchanged her First Bank shares for 1,212 shares of common stock of the Association in accordance with the exchange ratio set forth in the statutory prospectus ("The 1970 Prospectus") delivered to the stockholders of the banks to be acquired (in the ratio of 2.4 shares of the Association for 1 share of First Bank). Plaintiff purports to bring this action as a class action on behalf of all former shareholders of First Bank who exchanged their stock for Association stock in the 1970 Acquisitions.

The six remaining counts of the Complaint [1] are brought, respectively, under Section 11 of the Securities Act (15 U.S.C. § 77k) (Count I); Sections 12(2) and 17(a) of the Securities Act (15 U.S.C. §§ 77*l*(2) and 77q(a)) (Count II); Section 15 of the Securities Act (15 U.S.C. § 77*o*) (Count III); Section 10(b) of the Exchange Act (15 U.S.C. § 78j(b)) and Rule 10b–5 (17 C.F.R. § 240.10b–5) promulgated thereunder by the Securities and Exchange Commission (Count IV); Section 14(e) of the Exchange Act (15 U.S.C. § 78n(e)) (Count V); and the Maine Blue Sky Law (32 M.R.S.A. § 881) (Count VI). All six counts are based upon the same alleged untruths and omissions in the 1970 Prospectus. The alleged untruths and omissions are: (1) the failure to disclose that the 1968 "merger" of Eastern Trust and Banking Company ("Eastern Trust") and the Association ("The 1968 Reorganization") was not a valid statutory merger under Maine law and that therefore the exchange of securities in connection therewith was not exempt from registration under the Securities Act; and (2) the failure to disclose that the figures on which were based the "exchange ratio" used in the 1970 Acquisitions were out of date and inaccurate, resulting in the overvaluation of certain First Bank assets and the apportionment of a substantially larger share of ownership to the former stockholders of First Bank.[2]

Under the First Count of the Complaint, plaintiff on behalf of the class seeks money damages in the amount of $4,062,500. Under the Second Count, plaintiff tenders her Association shares and on behalf of the class seeks the value of their former First Bank shares in the sum of $12,500,000. Under the Third, Fourth, Fifth and Sixth Counts, she seeks the relief sought under the First

---

1. Count VII of the Complaint was dismissed on plaintiff's motion at oral argument.

2. Paragraph 19 of Count I, which alleged an additional misstatement in the 1970 Prospectus, was dismissed on plaintiff's motion at oral argument.

Count or, alternatively, the relief sought under the Second Count. With respect to so much of the Second Count as states a claim under Section 17(a) of the Securities Act, plaintiff also seeks punitive damages on behalf of the class in the amount of $1,000,000. Plaintiff further seeks her costs, interest, and expense of litigation, including reasonable attorneys' fees.

## II

## THE MOTIONS FOR SUMMARY JUDGMENT

Defendants have moved for summary judgment dismissing the claims alleged in Paragraphs 17 and 18 of the First Count of the Complaint and those portions of the remaining Counts which incorporate by reference Paragraphs 17 and 18 of the First Count. Paragraphs 17 and 18 of the First Count are those which allege the failure of the 1970 Prospectus to disclose that the 1968 Reorganization was not a valid statutory merger under Maine law and that therefore the exchange of securities in connection therewith was not exempt from registration under the Securities Act. The sole basis of defendants' motions is that plaintiff may not in this proceeding show that the 1968 Reorganization was not a valid statutory merger under Maine law because of the Certificate of Merger issued on March 19, 1969 by the Maine Bank Commissioner. Defendants contend that this Certificate conclusively established the validity of the merger by reason of 9 M.R.S.A. § 1227. The same argument was presented by defendants and rejected by the Court in *Dyer*. For the reasons stated in the *Dyer* opinion, it must again be rejected here.

Defendants' motions for summary judgment are denied.

## III

## THE MOTIONS TO DISMISS

Defendants' motions to dismiss raise questions with respect to each of the six remaining counts of the Complaint.[3] These questions will be separately considered with respect to each count as to which they are asserted.

### A. COUNT I.

Count I of the Complaint is brought under Section 11 of the Securities Act and is based upon alleged untruths and omissions in the 1970 Prospectus as contained in the Registration Statement filed with the Securities and Exchange Commission in connection with the 1970 Acquisitions. Defendants' motions seek dismissal only of Paragraphs 13, 14, 15 and 16 of this count. These are the paragraphs ("the Exchange Ratio Paragraphs") which allege the failure of the 1970 Prospectus to disclose that the figures on which were based the "exchange ratio" used in the 1970 Acquisitions were out of date and inaccurate, resulting in the overvaluation of certain First Bank assets and the apportionment of a substantially larger share of ownership to the former stockholders of First Bank. In other words, the essence of plaintiff's allegations in these paragraphs is that the assets of her bank were *overvalued* and that as a result she, together with the other First Bank shareholders, received *too much* in exchange for her First Bank shares.

■■■■ Defendants assert that the Exchange Ratio Paragraphs fail to state a cause of action under Section 11 because on their face they show that plaintiff was benefited rather than harmed by the alleged omissions in the Prospectus. Section 11, which is set out in pertinent part in the margin,[4] is, how-

---

3. Since defendants have filed an affidavit and plaintiff's deposition in connection with the motions to dismiss, the parties agree that the motions are to be treated as motions for summary judgment, as required by Fed.R.Civ.P. 12(b).

4. SEC. 11. (a) In case any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or neces-

ever, an "express liability" provision. *Weber v. C. M. P. Corp.*, 242 F.Supp. 321, 325 (S.D.N.Y.1965). Subject to enumerated defenses, Section 11 imposes an almost absolute liability for material misstatements or omissions in a registration statement; neither reliance on the untruths or omissions [5] nor causation of damage [6] need be shown by plaintiff in order to establish a cause of action thereunder. 3 Loss, Securities Regulation 1721–29 (2d ed. 1961); Cohen, "Truth in Securities" Revisited, 79 Harv. L.Rev. 1354–55 (1966). The allegation of a material misstatement or omission in a registration statement is sufficient to state a prima facie case under Section 11.[7] *E. g.,* Montague v. Electronic Corp. of America, 76 F.Supp. 933, 935 (S.D. N.Y.1948).

Defendants' motions to dismiss Paragraphs 13, 14, 15 and 16 of Count I of the Complaint are denied.

## B.  COUNT II.

Count II of the Complaint is brought under Sections 12(2) and 17(a) of the

sary to make the statements therein not misleading, any person acquiring such security (unless it is proved that at the time of such acquisition he knew of such untruth or omission) may, either at law or in equity, in any court of competent jurisdiction, sue—

\*      \*      \*      \*      \*

(e) The suit authorized under subsection (a) may be to recover such damages as shall represent the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and (1) the value thereof as of the time such suit was brought, or (2) the price at which such security shall have been disposed of in the market before suit, or (3) the price at which such security shall have been disposed of after suit but before judgment if such damages shall be less than the damages representing the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and the value thereof as of the time such suit was brought: Provided, that if the defendant proves that any portion or all of such damages represents other than the depreciation in value of such security resulting from such part of the registration statement, with respect to which his liability is asserted, not being true or omitting to state a material fact required to be stated therein or necessary to make the statements therein not misleading, such portion of or all such damages shall not be recoverable. In no event shall any underwriter (unless such underwriter shall have knowingly received from the issuer for acting as an underwriter some benefit, directly or indirectly, in which all other underwriters similarly situated did not share in proportion to their respective interests in the underwriting) be liable in any suit or as a consequence of suits authorized under subsection (a) for damages in excess of the total price at which the securities underwritten by him and distributed to the public were offered to the public. In any suit under this or any other section of this title the court may, in its discretion, require an undertaking for the payment of the costs of such suit, including reasonable attorney's fees, and if judgment shall be rendered against a party litigant, upon the motion of the other party litigant, such costs may be assessed in favor of such party litigant (whether or not such undertaking has been required) if the court believes the suit or the defense to have been without merit, in an amount sufficient to reimburse him for the reasonable expenses incurred by him, in connection with such suit, such costs to be taxed in the manner usually provided for taxing of costs in the court in which the suit was heard.

5.  The element of reliance was added by amendment to Section 11(a) in 1934, Act of June 6, 1934, 48 Stat. 907, but is specifically applicable only in the event an intervening financial statement had been issued. *Rudnick v. Franchard Corp.*, 237 F.Supp. 871, 873 n. 1 (S.D.N.Y.1965).

6.  It is true that *lack* of causation is at least a partial affirmative defense, to the extent that Section 11(e), note 4, *supra*, permits a defendant to prove that any diminution in value of the plaintiff's securities did not result from the untruth or omission. Professor Loss calls this "causation with a reverse twist." 3 Loss, Securities Regulation 1728 (2d ed. 1961).

7.  The materiality of any alleged misstatements or omissions is not a question before the Court at this time. *See* Rogen v. Ilikon Corp., 361 F.2d 260, 266–267 (1st Cir. 1966).

Securities Act and is based upon alleged untruths and omissions in the 1970 Prospectus.

■ 1. *The Section 17(a) Claim.* With respect to so much of Count II as asserts a claim under Section 17(a) of the Securities Act, defendants, by these motions, assert two defenses: first, that there is no implied private damage remedy under Section 17(a); and second, that if an action does lie under Section 17(a), that portion of Count II which incorporates by reference the Exchange Ratio Paragraphs of Count I fails to state a claim under Section 17(a). In its consideration of the Section 17(a) claims in *Dyer,* the Court has held that there is no implied private damage remedy under Section 17(a). That conclusion is sufficient to dispose of the Section 17(a) claim in the present action. In addition, for the reasons stated by the Court in its discussion of Counts IV and V of the present complaint, the Court holds that, even if a private action would lie under Section 17(a), the Exchange Ratio Paragraphs fail to state a claim upon which relief may be granted thereunder.

Defendants' motions to dismiss the Section 17(a) claim in Count II of the Complaint are granted.

2. *The Section 12(2) Claim.* With respect to so much of Count II as asserts liability under Section 12(2) of the Securities Act, defendants seek dismissal of that portion thereof which incorporates by reference the Exchange Ratio Paragraphs of Count I. Defendants' argument is the same as that made in support of their motion to dismiss these paragraphs in Count I: that the para-

graphs on their face disclose that plaintiff was benefited rather than harmed by the alleged omissions in the Prospectus.

■■ Section 12(2), like Section 11, is an "express liability" provision. Weber v. C. M. P. Corp., *supra.* Just as under Section 11, allegations of material misstatements or omissions in a prospectus are sufficient to make out a prima facie case under Section 12(2); neither reliance nor causation need be shown by plaintiff in order to establish a cause of action thereunder. Newberg v. American Dryer Corp., 195 F.Supp. 345, 352 (E.D.Pa.1961); 3 Loss, Securities Regulation 1729 (2d ed. 1961); *cf.* Murphy v. Cady, 30 F.Supp. 466, 470 (D.Me. 1939), 113 F.2d 988 (1st Cir. 1940).

Defendants' motions to dismiss Paragraphs 13, 14, 15 and 16 of Count I of the Complaint as incorporated by reference in Count II are denied.

C. COUNT III.

■ Count III of the Complaint is brought under Section 15 of the Securities Act against fourteen named defendants who are alleged to have been "controlling persons" of First Bank or the Association at the time of the 1970 Acquisitions. The count is based upon alleged untruths and omissions in the 1970 Prospectus. These defendants seek dismissal of this count for failure to state a cause of action under Section 15. The Court agrees.

Section 15, which is set out in the margin,[8] does no more than provide for the liability of persons who control "any person liable under section 11 or 12 (of the Act). . . ." Count III contains no allegation that the persons al-

8. SEC. 15. Every person who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency, or otherwise, controls any person liable under section 11 or 12, shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist.

legedly "controlled" by the named defendants are liable under either Section 11 or Section 12. As the count now stands, it is clearly insufficient, since "control" liability under Section 15 is dependent upon liability of the controlled person under either Section 11 or Section 12. *Cf.* Demarco v. Edens, 390 F.2d 836, 841 (2d Cir. 1968); Bailey v. Drattell, CCH Fed.Sec.L.Rep. ¶ 91,402 (S.D.N.Y.1964) [1964–66 transfer binder].

Defendants' motions to dismiss Count III of the Complaint are granted.

## D. COUNTS IV AND V.

■ Counts IV and V of the Complaint are brought, respectively, under Section 10(b) of the Exchange Act and Rule 10b–5 thereunder (Count IV) and under Section 14(e) of the Exchange Act (Count V). Both are based upon alleged untruths and omissions in the 1970 Prospectus. Defendants seek dismissal of so much of these counts as incorporates by reference the Exchange Ratio Paragraphs of Count I. They contend that these paragraphs fail to state a cause of action under either Section 10(b) or Section 14(e) because they show on their face that the alleged omissions in the Prospectus caused plaintiff no harm and actually benefited her. In addition, defendants assert that no private damage remedy is available under Section 14(e) of the Exchange Act.[9]

■ 1. *Civil Remedy under Section 14(e).* In its consideration of the Section 14(e) claims in *Dyer,* the Court has held that Section 14(e) does give rise to an implied private damage remedy. That conclusion is sufficient to dispose of defendants' argument to the contrary in the present case.

2. *Cause of Action under Sections 10(b) and 14(e).* Section 10(b) of the Exchange Act and its implementing Rule 10b–5, relied upon in Count IV, and Section 14(e) of the Exchange Act, relied upon in Count V, do not expressly provide for a civil damage remedy. They are criminal fraud provisions; therefore, a private cause of action implied thereunder can only be based upon "the general principle of tort law that violation of a provision of a criminal statute can . . . give rise to a civil remedy in tort." Trussell v. United Underwriters, Ltd., 228 F.Supp. 757, 765 (D. Colo.1964); *cf.* Restatement, Second, Torts § 286.

■ Plaintiff alleges in the Exchange Ratio Paragraphs that the 1970 Prospectus failed to disclose that she and the other First Bank stockholders were to receive shares of Association stock based upon an inflated valuation of their First Bank shares. The substance of her allegations is that she got *too much* from the Association for the shares she gave up, because of an undisclosed *overvaluation* of First Bank assets. It is evident, that, according to the allegations themselves, the alleged omissions actually benefited plaintiff and the former shareholders of First Bank rather than causing them any harm or damage. Such allegations are plainly insufficient to give rise to an implied private remedy under either Section 10(b) or Section 14(e). It is established that in order to recover for a violation of these statutes, a plaintiff must allege and show that the "conduct of the defendant actually caused the plaintiff's injury." List v. Fashion Park, Inc., 340 F.2d 457, 462 (2d Cir.), cert. denied, 382 U.S. 811, 86 S.Ct. 23,

---

9. Although there is no explicit civil remedy provided for by either Section 10(b) or Rule 10b–5, it is well settled that a private cause of action arises by implication of the Act. Supt. of Insurance of the State of New York v. Bankers Life and Casualty Co., 404 U.S. 6, 92

S.Ct. 165, 30 L.Ed.2d 128 (1971); Janigan v. Taylor, 344 F.2d 781, 783 (1st Cir.), cert. denied, 382 U.S. 879, 86 S.Ct. 163, 15 L.Ed.2d 120 (1965); Fischman v. Raytheon Mfg. Co., 188 F.2d 783, 787 (2d Cir. 1951).

15 L.Ed.2d 60 (1965); Vine v. Beneficial Finance Co., Inc., 374 F.2d 627, 635 (2d Cir.), cert. denied, 389 U.S. 970, 88 S.Ct. 463, 19 L.Ed.2d 460 (1967); Globus v. Law Research Service, Inc., 418 F.2d 1276, 1291–1292 (2d Cir. 1969), cert. denied, 397 U.S. 913, 90 S.Ct. 913, 25 L.Ed.2d 93 (1970). Unlike Sections 11 and 12 of the Securities Act, which are "express liability" provisions, Sections 10(b) and 14(e) of the Exchange Act are "implied liability" statutes and causation of injury to the plaintiff is an essential element of the civil remedy implied thereunder.[10] It is not enough to allege that the untruths or omissions might have hurt others, but did not harm and, indeed, actually benefited the plaintiff. Mutual Shares Corp. v. Genesco, Inc., 266 F.Supp. 130, 132 (S.D.N.Y.), *modified,* 384 F.2d 540 (2d Cir. 1967); Slavin v. Germantown Fire Ins. Co., 174 F.2d 799, 807 (3rd Cir. 1949); Twardzik v. Sepauley, 286 F.Supp. 346, 351 (E.D.Pa.1968); Hoover v. Allen, 241 F. Supp. 213, 227 (S.D.N.Y.1965); Barnett v. Anaconda Co., 238 F.Supp. 766, 770–772 (S.D.N.Y.1965); Kremer v. Selheimer, 215 F.Supp. 549, 552 (E.D.Pa.1963); Mills v. Sarjem Corp., 133 F.Supp. 753, 770 (D.N.J.1955).[11] In the present case,

the undisclosed overvaluation of First Bank assets may have harmed the former shareholders of Eastern Trust and the other acquired banks, but certainly did not harm, and in fact actually benefited plaintiff and the former First Bank shareholders.[12]

Defendants' motions to dismiss so much of Counts IV and V of the Complaint as incorporates by reference Paragraphs 13, 14, 15 and 16 of Count I are granted.

### E. COUNT VI.

■ Count VI of the Complaint asserts a claim under the Maine Blue Sky Law upon principles of pendent jurisdiction. Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933). It is brought under 32 M.R.S.A. § 881(1) (B) and is based upon the same alleged untruths and omissions in the 1970 Prospectus which form the basis of plaintiff's federal law claims in the earlier counts. Defendants seek dismissal of so much of this count as incorporates by reference the Exchange Ratio Paragraphs of Count I on the ground that the omissions alleged therein benefited, and did not harm, plaintiff. Section 881 (1) (B),[13] however, substantially tracks

---

10. Reliance is also a necessary condition of a cause of action under the implied liability provisions of the Federal Securities Laws. Rogen v. Ilikon Corp., *supra,* 361 F.2d at 266; Janigan v. Taylor, *supra,* 344 F.2d at 785–786. Although the point has not been raised or briefed by defendants, the Court notes that nowhere in the Complaint does plaintiff allege that she relied upon the alleged untruths and omissions in the 1970 Prospectus.

11. Although the cited cases involved Section 17 of the Securities Act and Section 10(b) and Rule 10b–5 of the Exchange Act, the principle is equally applicable to claims under Section 14(e).

12. In Paragraph 7 of Count I of the Complaint, plaintiff asserts that she was a shareholder of the Association before the 1970 Acquisitions. Plaintiff and her attorney acknowledged this to be an error at her deposition.

13. Section 881(1) (B) provides:
   1. *Liabilities.* Any person who

   . . . . .

   B. Offers or sells a security, whether or not exempt or in an exempt transaction, by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, the buyer not knowing of the untruth or omission, and who does not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the untruth or omission,
   is liable to the person buying the security from him, who may sue to recover the consideration paid for the security, together with interest at 6% per year from the date of payment, costs and reasonable attorneys' fees, less the amount of any income received

the language of Section 12(2) of the Securities Act. Like Section 12(2), it is an "express liability" provision. Allegations of material omissions or misstatements are sufficient for a prima facie case under Section 881(1) (B); plaintiff is not required to allege or prove causation of damage in order to establish a cause of action thereunder.

Defendants' motions to dismiss so much of Count VI of the Complaint as incorporates by reference Paragraphs 13, 14, 15 and 16 of Count I are denied.

### IV

### CONCLUSION

In accordance with the foregoing, it is ordered as follows:

1. Defendants' motions for summary judgment are denied.

2. Defendants' motions to dismiss Paragraphs 13, 14, 15 and 16 of Count I of the Complaint and so much of Counts II and VI of the Complaint as incorporates by reference Paragraphs 13, 14, 15 and 16 of Count I are denied.

3. Defendants' motions to dismiss so much of Count II of the Complaint as asserts a claim under Section 17(a) of the Securities Act and so much of Counts IV and V of the Complaint as incorporates by reference Paragraphs 13, 14, 15 and 16 of Count I are granted.

4. Defendants' motions to dismiss Count III of the Complaint are granted.

### CERTIFICATE

Pursuant to 28 U.S.C. § 1292(b) I hereby certify that in my opinion the foregoing order involves controlling questions of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation.

on the security, upon the tender of the security, or for damages if he no longer owns the security. Damages are the amount that would be recov-

erable upon a tender less the value of the security when the buyer disposed of it and interest at 6% per year from the date of disposition.