CHICAGO CONSORTIUM, INC., a non-profit corporation, Plaintiff-Appellant,

v.

Peter J. BRENNAN, Individually and as Secretary of the United States Department of Labor, et al., Defendants-Appellees.

No. 78–1125.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 15, 1979.

Decided March 21, 1979.*

---

* This appeal was originally decided by an unreported order on March 21, 1979. *See* Circuit Rule 35. The court has subsequently decided to issue the decision as an opinion.

Joseph D. Wolgel, Chicago, Ill., for plaintiff-appellant.

Alexander Younger, Civ. Div., Dept. of Justice, Washington, D. C., for defendants-appellees.

Before FAIRCHILD, Chief Judge, CASTLE, Senior Circuit Judge, and WOOD, Circuit Judge.

PER CURIAM.

In 1972 the Secretary of the Department of Labor, the defendant-appellee, entered into a contract with Chicago Consortium, Inc., the plaintiff-appellant, pursuant to his authority under the Manpower Development and Training Act of 1962, 42 U.S.C. § 2571 *et seq.* (1970) (MDTA). Under the terms of the contract, Consortium would recruit and place trainees in on-the-job training programs and the Secretary would reimburse Consortium for certain program costs. During October 1972, about eight months before the contract was to expire, the Secretary stopped making payments to Consortium. Up until then Consortium had received $133,367 under the contract. About $238,031, the costs incurred by Consortium under the program from September 1972 to June 1973, is the subject of this controversy. After payments were suspended, and after the June 1973 termination date specified in the contract, Congress repealed the MDTA, P.L. 93–203, 87 Stat. 883.

In 1974, Consortium brought this action in the federal district court against the Secretary, several of his subordinates, and miscellaneous officials of the State of Illinois. Consortium asked for declaratory and injunctive relief and a writ of mandamus directing the Secretary to restore funding to Consortium and to refrain from various forms of alleged harassment, including covert surveillance and intimidation of Consortium, burglarizing Consortium's offices, falsely impersonating federal agents, searching and removing records from Consortium offices without its consent, and withholding funds allegedly owed Consortium. The complaint specifically requested four forms of relief: a declaration of the duties and responsibilities of the Secretary

regarding Consortium's contract perform-ance, an injunction ordering the Secretary to cease and desist from withholding funds allegedly due Consortium under the con-tract, an injunction against the alleged harassment and intimidation, and manda-mus directing the Secretary to adhere to the positive duty imposed on him by the Constitution and MDTA.

On October 20, 1977, the district court dismissed the action. The trial judge, rely-ing on two affidavits submitted by the Government, held that the case was moot. In the first affidavit, the Administrator of the Office of Comprehensive Employment in the Department of Labor stated that as a result of the repeal of the MDTA that no MDTA program or contract had been in operation since December 1975 and that no employer was entitled to funds after that date. In the second affidavit, an officer of Consortium's landlord stated that the Con-sortium had vacated its offices. Based upon these uncontroverted affidavits, the district court held that it was "impossible to perceive how any of the allegedly harassing activities" could still be continuing and not-ed that Consortium had not presented any evidence of harassment or other improper activities after the termination of the MDTA in December 1975. Regarding the complaint as one primarily seeking to re-strain the Secretary from harassing the plaintiff, the district court concluded that there was no likelihood that the alleged improper actions would be repeated in the future.

Consortium appeals from the dismissal. Consortium concedes that much of the con-troversy insofar as its request for equitable relief from the alleged harassment by the Secretary is moot. Consortium, however, still contends that it is entitled to equitable relief against the Secretary for (1) ordering and directing a fictitious examination of Consortium's files, books, and records under the pretense of an audit, (2) secretly remov-ing and attempting to remove Consortium's records, documents, and papers from Con-sortium's offices without the knowledge and consent of Consortium, and (3) ordering and directing the withholding of funds owed to Consortium.

■ The Secretary has not conducted any activities under the MDTA since it was repealed, and Consortium no longer even occupies offices. The repeal of the MDTA precludes future examination of Consorti-um's books under the pretense of an audit. Since Consortium has offered no evidence that it still maintains any offices, the Secre-tary cannot remove records from Consorti-um's offices. Therefore, the district court's dismissal of these allegations as moot is in accord with this court's decision in *Smith v. United States Civil Service Commission,* 520 F.2d 731 (7th Cir. 1975), which held that a statutory amendment "rendered future threats of actual interference with the plaintiffs moot, and warranted the dismiss-al of the case which sought only injunctive and declaratory relief." *Id.* at 735. The court in *Smith* relied on *United States v. W. T. Grant Co.,* 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 (1953), in which the Supreme Court noted that a prerequisite to injunc-tive relief "is that there exists some cogni-zable danger of recurrent violation, some-thing more than [a] mere possibility which serves to keep the case alive." *Id.* at 633, 73 S.Ct. at 898. *See also Hall v. Beals,* 396 U.S. 45, 90 S.Ct. 200, 24 L.Ed.2d 214 (1969).

■ Consortium's request for relief from the withholding of funds seems to be either moot or beyond the jurisdiction of the court. The repeal of the MDTA necessarily prevents any danger of the withholding of funds for future employment projects un-der the Act. One of the uncontroverted affidavits before the district court stated: "Since the MDTA has now been repealed, the Secretary of Labor is no longer empow-ered to award or expend MDTA funds for the further operation of any MDTA pro-gram. . . ."

■ Consortium before the district court apparently disclaimed any reliance on its contract with the Secretary as the basis for requiring the Secretary to pay over funds for Consortium's past operations, and the district court relied on this as a judicial admission that no contract claim was before

the court. Nevertheless, Consortium continues to press before this court its claim for relief against the Secretary to secure the release of the withheld funds. We think that to the extent that Consortium's complaint seeks release of the funds, it can only be regarded as a contractual claim against the United States which exceeds $10,000. Therefore, exclusive jurisdiction over the claim is vested by statute in the Court of Claims. *See* 28 U.S.C. §§ 1346(a)(2), 1391. A claim which seeks essentially the same relief as would be afforded on a contract claim cannot avoid the jurisdictional limitations contained in the Tucker Act merely because the complaint is framed as a request for equitable relief. *See Warner v. Cox,* 487 F.2d 1301 (5th Cir. 1974); *International Engineering Co. v. Richardson,* 167 U.S.App.D.C. 396, 512 F.2d 573 (1975); *Cook v. Arentzen,* 582 F.2d 870 (4th Cir. 1978).[1]

Finally, Consortium relies on allegations contained in its complaint to the effect that the Secretary withheld MDTA funds without notice or a statement of reasons.[2] Consortium now maintains that it is "the fact [of] the failure and omission of the Secretary . . . to give Consortium such notices as are required by rule and regulation" that saves its complaint from dismissal. We think that the allegations concerning lack of notice, fairly read in the context of the entire complaint, were alleged to show what Consortium believed was the Secretary's evil purpose to destroy MDTA programs, and his bad faith in refusing to fund Consortium's program. The allegations do not appear aimed at securing a declaration of Consortium's right to notice—a right which Consortium vaguely claims is secured by the Administrative Procedure Act, the terms of the contract, the regulations promulgated under the MDTA, and the due process clause of the Fifth Amendment.

But even if we assume *arguendo* that the complaint requests a declaration that Consortium was entitled to notice, it does nothing to save Consortium's complaint. The repeal of the MDTA precludes any possibility that the Secretary will arbitrarily cut off MDTA funds in the future. Similarly, whether the Secretary had a duty to give notice in conjunction with the cutoff of funds for the past MDTA program is such an abstract, if not necessarily moot, question when considered apart from the question of the Consortium's right to the funds in the first place, that a court should, in the exercise of its discretion, decline to consider it. *See A. L. Mechling Barge Lines, Inc. v. United States,* 368 U.S. 324, 82 S.Ct. 337, 7 L.Ed.2d 317 (1961).

The judgment of the district court dismissing the complaint is affirmed.

---

1. The Government requested that the district court transfer this part of plaintiff's claim to the Court of Claims. The district court denied the request, relying on plaintiff's disavowal of any claim based on contract. 28 U.S.C. § 1406(c) provides that the district court shall order the transfer of a case within the exclusive jurisdiction of the Court of Claims "if it be in the interest of justice." Neither party has requested this court to reexamine the district court's ruling on the motion to transfer, and given the plaintiff's specific disclaimer of any contractually based claim before the district court, we decline to reexamine the court's ruling *sua sponte.*

2. Paragraph 6 of the complaint, for example, alleges:

   Defendants at no time served plaintiff with any notice of termination, cancellation or recision of the training program operated by plaintiff because defendants well knew there were no valid or legal grounds for such termination. Instead, to cover up their Chicago-style Watergate dirty tricks, defendants gave plaintiff's program the "deep six" in the bowels of the U.S. Attorney's Office in Chicago, and invoked the privileges of a grand jury to conceal their ulterior purposes.