**Karen SIMPSON and Diane Brooks, on behalf of themselves, their minor children, and all others similarly situated, Plaintiffs,**

**v.**

**Jeffrey MILLER, Director, Illinois Department of Public Aid, in his official capacity, and the Illinois Department of Public Aid, a state agency, Defendants.**

No. 81 C 2985.

United States District Court, N. D. Illinois, E. D.

Feb. 16, 1982.

Aviva Futorian, Debra Raskin, Diane Redleaf, Legal Assistance Foundation of Chicago, Chicago, Ill., for plaintiffs.

Ellen P. Brewin, Patrice Suberlak, Sp. Asst. Attys. Gen., Chicago, Ill., for defendants.

## MEMORANDUM OPINION

MARSHALL, District Judge.

Title IV–A of the Social Security Act, 42 U.S.C. §§ 601–613 (1976 & West Supp.1981) creates a program known as Aid to Families with Dependent Children (AFDC). This program is designed to alleviate some of the hardships of poverty for families containing underprivileged children. In this lawsuit, plaintiffs mount a challenge to the method

by which the State of Illinois determines the income of those families participating in the program. Plaintiffs claim that Illinois fails to either exclude from income or reimburse for the child care costs incurred by working mothers in the program. This failure, it is alleged, is inconsistent with Title IV–A, and therefore violates the supremacy clause of the Constitution. This court's jurisdiction rests on 42 U.S.C. § 1983 (1976) and 28 U.S.C. § 1331 (West Supp.1981).

In Illinois, the amount of a family's AFDC grant depends in part on the calculation of the family's income made by defendant Illinois Department of Public Aid (IDPA). Prior to October 1, 1981, federal law required a state, in determining a family's income, to deduct from income all work expenses of the family attributable to the earning of the family's income. See 45 C.F.R. § 233.20(a)(7) (1980); see generally 42 U.S.C. § 602(a)(7) (West Supp.1981). Effective October 1, 1981, federal law requires a state to subtract from income a recipient family's child care expenditures up to $160 per month, or up to a lesser amount that the United States Department of Health and Human Services may prescribe in the case of a recipient who works less than full time. 42 U.S.C. § 602(a)(8)(A) (West Supp.Dec.1981).

Illinois does not exclude work-related child care expenses from the income it calculates for AFDC families. Of the 38,607 AFDC clients[1] in Illinois who have earned income, about 5,809 place their children in day care centers whose costs are fully reimbursed by the state. Plaintiffs' Amended Memorandum in Support of Motion to Proceed as a Class, App. 2. About 30 percent of the remaining working clients receive some reimbursement of their child care expenses. Id. App. 3.[2] The remaining 70 percent receive no reimbursement at all.

The result is that, for this group, although they have earned income, no reimbursement or deduction is received for the child care expenses incurred, despite the fact that it is logical to assume that many of these families do incur child care expenses, since virtually all the families with earned income contain a working mother. See id. App. 1.[3] Even for the 30 percent who receive reimbursement, the amounts reimbursed are subject to maximums that are significantly less than the $160 exclusion called for by federal law. For child care in a home licensed by the Illinois Department of Children and Family Services, reimbursement in Cook County is limited to $132.22 per month, and similar rates apply in other counties. Amended Complaint ¶ 13(a). For child care in a recipient's home, the limit is $94.60 per month. Id. ¶ 13(b). This rate also applies to care in a relative's home or in a home which has been referred for licensing but not yet licensed. No reimbursement is provided for child care services when the provider resides in the same home as the recipient or has not sought or been approved for licensing. Id. ¶ 13(c).

Plaintiff Karen Simpson works as a receptionist/clerk and earns approximately $197 bi-monthly. She pays a relative $140 per month to take care of her child, while receiving only $94.60 as reimbursement, and no deduction from her earned income. Amended Complaint ¶¶ 14–17. Plaintiff Diane Brooks works in a fast food restaurant and earns approximately $120 every two weeks. She works while two of her children are in school, but must leave her third child with a babysitter. That child, Germaine, has asthma and has difficulty traveling on public transportation. Therefore, plaintiff leaves Germaine with a neighbor who lives on the same block. The babysit-

---

1. This figure is as of November, 1980. Plaintiffs' Amended Memorandum in Support of Motion to Proceed as a Class, App. 1.

2. This figure is a projected figure for fiscal year 1980.

3. IDPA does not keep figures for the number of working women receiving AFDC. However,

since virtually all AFDC families contain only a single female parent, id., they are likely to incur child care costs if the mother goes to work. It is logical to assume that most or all of 12,454 families with earned income contain working mothers, since it is much more likely that the mother is the family member earning income than is a child.

ter is not licensed by the state as a child care provider. Consequently, plaintiff receives no reimbursement from the state, although she pays the babysitter approximately $86 per month.

Plaintiffs propose that the following class be certified under Fed.R.Civ.P. 23, so that they may proceed on behalf of the class:

All AFDC recipients in Illinois who since April 1, 1980, have been, are, or will be employed, and who have incurred, are incurring or will incur reasonable employment-related child care expenses which defendants have failed or refused to reimburse, in their actual amount prior to October 1, 1981, and in their actual amount up to $160 per month as of October 1, 1981.

■ The major argument defendants launch against class certification is that any claim that state policy was inconsistent with federal law prior to October 1, 1981 is now moot, since the law changed on October 1.[4] The only live claim, defendants assert, is for injunctive relief against the policy currently in effect. Therefore, defendants argue, no class should be certified which includes persons with pre-October 1981 claims.[5]

■ Plaintiffs concede that a claim for injunctive relief based on incompatibility between defendants' policies and the old statute is now moot. However, plaintiffs argue that the pre-October claims of putative class members are not moot, since this court may order defendants to notify members of the class that they were denied public assistance and that class members may pursue state administrative remedies to recover the amounts denied. It is well-settled that the eleventh amendment does not bar such relief. *See Quern v. Jordan*, 440 U.S. 332, 347–39, 99 S.Ct. 1139, 1148–1149, 59 L.Ed.2d 358 (1979); *Townsend v. Quern*, 473 F.Supp. 193 (N.D.Ill.1979); *Grubb v. Sterrett*, 315 F.Supp. 990, 995–96 (N.D.Ind.) (three-judge court), *aff'd*, 400 U.S. 922, 91 S.Ct. 187, 27 L.Ed. 182 (1970); *Solman v. Shapiro*, 300 F.Supp. 409, 416 (D.Conn.) (three-judge court), *aff'd*, 396 U.S. 5, 90 S.Ct. 25, 24 L.Ed.2d 5 (1969). Defendants concede the existence of this remedy, but argue that it is insufficient to save the pre-October claims from mootness.

■ "[M]ootness has two aspects: 'when the issues are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" *United States Parole Commission v. Geraghty*, 445 U.S. 388, 396, 100 S.Ct. 1202, 1208, 63 L.Ed.2d 479 (1980) (quoting *Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 1950, 23 L.Ed.2d 491 (1969)). The pre-October claims clearly meet the first aspect of mootness: they are "live." Plaintiffs continue to be denied the full amount of benefits they claim they were entitled to, and the putative class still has not been notified that it has a state damage remedy. As long as the defendants do not notify the putative class of their asserted remedy, plaintiff's claim of a "present right" to notice relief, *see Ashcroft v. Mattis*, 431 U.S. 171, 172, 97 S.Ct. 1739, 1740, 52 L.Ed.2d 219 (1977) (per curiam), remains live. *See Powell v. McCormack*, 395 U.S. 486, 496–500, 89 S.Ct. 1944, 1950–1952, 23 L.Ed.2d 491 (1969) (claim for injunctive relief against exclusion from Congress moot, but claim for back pay and declaratory relief remains live); *Liner v. Jafco*, 375 U.S. 301, 84 S.Ct. 391, 11 L.Ed.2d

---

**4.** Under normal circumstances, plaintiffs would have a claim for money damages based on defendants' wrongful denial of reimbursement which would not be mooted by the statutory change. However, the eleventh amendment prohibits federal courts from making such awards. *See Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

**5.** It is unclear why defendant believes that mootness should serve as a bar to certification. Fed.R.Civ.P. 23 nowhere states that a live, justiciable claim is required as a prerequisite for certification. Analytically, it seems more correct to say that the court lacks jurisdiction over pre-October claims because they are moot, rather than that these claims cannot proceed as a class under rule 23. However, whatever the appropriate nomenclature, the practical result of defendant's position remains the same, that we should not entertain moot claims. Therefore, we will consider the mootness claim even though it seems more properly considered under Fed.R.Civ.P. 12(b)(1) than under rule 23.

347 (1964) (claim for injunctive relief against picketing moot, but claim for recovery on injunction bond remains live); *Chapman v. Kleindienst*, 507 F.2d 1246, 1249–50 (7th Cir. 1972) (prisoner's release from segregation does not moot claims for declaratory relief, damages, expungement of record, and injunction against future segregation). *See also Powell v. McCormack*, 395 U.S. at 499–500, 89 S.Ct. at 1952 (even if the "primary claim" is moot, live "secondary claims" are sufficient to avoid mootness). Until the putative class receives the notice relief to which plaintiffs claim it is entitled, the pre-October policy will have a "continuing force," and the dispute regarding it will remain live. *See Diffenderfer v. Central Baptist Church*, 404 U.S. 412, 415, 92 S.Ct. 574, 576, 30 L.Ed.2d 567 (1972).[6]

Because the controversy over notice relief against the pre-October policy remains live, defendants' mootness argument should be considered with reference to the second prong of the mootness inquiry: whether plaintiffs' interest in obtaining notice relief constitutes a "legally cognizable interest in the outcome." This inquiry is usually referred to as the requirement that the plaintiff have a "personal stake" in the outcome of the controversy. *Geraghty*, 445 U.S. at 396, 100 S.Ct. at 1208. In *Geraghty*, the Court explained this "personal stake" requirement:

> [T]he purpose of the "personal stake" requirement is to assure that the case is in a form capable of judicial resolution. The imperatives of a dispute capable of judicial resolution are sharply presented issues in a concrete factual setting and self-interested parties vigorously advocating opposing positions. *Id.* at 403, 100 S.Ct. at 1212 (citations omitted).

This formulation of the personal stake requirement was not new in *Geraghty*. The Court has consistently characterized the personal stake requirement as a means to an end. A personal stake is necessary in order to ensure adversarial presentation and a concrete factual record, the two requirements for a case capable of judicial resolution. *See, e. g., Duke Power Co. v. Carolina Environmental Study Group*, 438 U.S. 59, 72, 98 S.Ct. 2620, 2629, 57 L.Ed.2d 595 (1978); *Warth v. Seldin*, 422 U.S. 490, 498–99, 95 S.Ct. 2197, 2204–05, 45 L.Ed.2d 343 (1975); *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 220–21, 94 S.Ct. 2925, 2931–32, 41 L.Ed.2d 706 (1974); *Roe v. Wade*, 410 U.S. 113, 123, 93 S.Ct. 705, 711, 35 L.Ed.2d 147 (1973); *Sierra Club v. Morton*, 405 U.S. 727, 731–32, 92 S.Ct. 1361, 1364, 31 L.Ed.2d 636 (1972); *Flast v. Cohen*, 392 U.S. 83, 99–101, 88 S.Ct. 1942, 1952–53, 20 L.Ed.2d 947 (1969); *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962); Tushnet, *The Sociology of Article III: A Response to Professor Brilmayer*, 93 Harv.L.Rev. 1698, 1706 (1980).

Defendants concede that if the law had not changed on October 1, 1981, plaintiffs' claims would be justiciable. The dispositive question becomes, then, whether the change in law rendered the pre-October claims either nonadversarial or placed them in an abstract factual context, since the only remaining live claim was for notice relief.[7]

The change in law occurring on October 1, 1981, did nothing to place this case in a nonadversarial posture. The parties, from all appearances, vigorously advocate their respective positions as to the claim for notice relief against the pre-October actions of

---

**6.** The cases defendants rely on involve controversies that are not "live" in this sense. These cases merely stand for the proposition that when a statute is repealed, claims for declaratory and injunctive relief against continued adherence to the statute are rendered moot. *See, e.g., Chicago Consortium, Inc. v. Brennan*, 599 F.2d 138 (7th Cir. 1977); *Smith v. United States Civil Service Commission*, 520 F.2d 731, 734–35 (7th Cir. 1975). In these cases, the statute under attack had no "continuing force" after its repeal. Here, plaintiffs do allege a continuing force: that they continue to be denied notice relief.

**7.** Plaintiffs also have a pre-October claim for declaratory relief. However, defendants are correct when they state that a claim for declaratory relief, standing alone, does not keep an otherwise moot claim alive. *See Ashcroft v. Mattis*, 431 U.S. 171, 97 S.Ct. 1739, 52 L.Ed.2d 219 (1977) (per curiam).

defendants. Similarly, the change in law did nothing to render the factual setting of the case less concrete. In fact, the statutory change did not alter the factual posture of the case at all; it merely mooted one of the prayers for injunctive relief which otherwise could have been made. The facts regarding the asserted economic hardships imposed on plaintiffs prior to October 1 were unaltered, and their asserted lack of justification under federal law unchanged, by the statutory alteration effected October 1, 1981. There is nothing either nonadversarial or abstract about plaintiffs' claim for notice relief against the pre-October policies of defendants. Therefore, the case is not moot. *Cf. Geraghty*, 445 U.S. at 397–404, 100 S.Ct. at 1209–1212 (since plaintiff's claim that his motion for class certification was erroneously denied was adversarial and not abstract, it was not moot even though plaintiffs' claim on the merits was mooted); *Deposit Guaranty National Bank v. Roper*, 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980) (same).[8]

Defendants argue that the claim is moot because the class plaintiffs seek to represent was not certified prior to October 1, 1981. Why this should make any difference is entirely unclear. Defendants seem to base their argument on cases in which the Court held that a case was not mooted even though the name plaintiffs' individual claim was, because a class was certified prior to the mooting of an individual claim. *See, e.g., Franks v. Bowman Transportation Co.*, 424 U.S. 747, 752–57, 96 S.Ct. 1251, 1258–60, 47 L.Ed.2d 444 (1976). However, in these cases the Court had to look to class certification precisely because the name plaintiffs had no live claim. Here, the name plaintiffs, as putative class representatives, have a live claim that the class they seek to represent should be certified and then provided with notice relief. Hence, name plaintiffs have a personal stake in the outcome of this case.[9] Thus, there is no need to rely on class members to provide a non-mooted claim; certification simply adds more live claims to those already presented by name plaintiffs.[10] Defendants' position is without merit.

We now turn to the question of whether class certification is appropriate in this case. Plaintiffs have the burden of demonstrating that certification is proper. *Valentino v. Howlett*, 528 F.2d 975, 978 (7th Cir. 1976).

■ There are four prerequisites to certification under Fed.R.Civ.P. 23(a).[11] These are

---

**8.** *See generally Sibron v. New York*, 392 U.S. 40, 57, 88 S.Ct. 1889, 1899, 20 L.Ed.2d 917 (1968):

> None of the concededly imperative policies behind the constitutional rule against entertaining moot controversies would be served by a dismissal in this case. There is nothing abstract, feigned, or hypothetical about Sibron's appeal. Nor is there any suggestion that either Sibron or the State has been wanting in diligence or fervor in the litigation.

**9.** Both name plaintiffs assert pre-October 1981 claims for notice relief. Moreover, since *Geraghty* and *Roper* stand for the proposition that a name plaintiff has an individual claim, as a putative class representative, to be certified as a representative, sufficient in itself to avoid mootness, it follows *a fortiori* that the instant name plaintiffs' claim for certification and notice to the class is also sufficient to avoid mootness.

**10.** Defendants rely on a rather cryptic footnote from what appears to be the only case either side contends is on point, *Massachusetts Hospital Association, Inc. v. Harris*, 500 F.Supp. 1270, 1280 n.9 (D.Mass.1980). The footnote seems to suggest that notice relief is not sufficient to avoid mootness. In that case, plaintiff was a trade association representing 161 hospitals. However, that case was not a class action, so that plaintiff could not assert the right of the class to notice relief, absent a showing that it had *jus tertii* standing which the association apparently did not make. Therefore, the case does not appear to be inconsistent with the result we reach.

**11.** As an initial matter, a readily identifiable class must exist. *Simer v. Rios*, 661 F.2d 655, 667–71 (7th Cir. 1981). The initial class definition proposed by plaintiffs created problems of identification, since the proposed class consisted of AFDC recipients who received lower benefits than "those to which they are entitled." Thus, the class could be defined only by reference to the as yet unresolved merits of the case. However, the proposed class has since been redefined so that membership can be determined simply by reference to the amount of unreimbursed child care expenses of putative

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

■ The first element is numerosity. While the precise number of members of the proposed class is not known, the figures provided to plaintiffs by defendants indicate that the class runs into the thousands. Defendants do not quarrel with this estimate. The class is sufficiently numerous. *See Swanson v. American Consumer Industries, Inc.*, 415 F.2d 1326, 1333 (7th Cir. 1969); *Randle v. Swank*, 53 F.R.D. 577, 581 (N.D.Ill.1971), *aff'd*, 419 U.S. 1028, 95 S.Ct. 509, 42 L.Ed.2d 304 (1974).

■ The second prerequisite is that there be a common question of law or fact. Whether Illinois policy of refusing to either deduct child care expenses from income or else reimburse these amounts fully prior to October 1, 1981, and up to $160 from October 1 onward, is in conflict with federal law is a question of law common to the class. *See Rodriguez v. Swank*, 318 F.Supp. 289, 294 (N.D.Ill.1970) (three-judge court), *aff'd*, 403 U.S. 901, 91 S.Ct. 2202, 29 L.Ed.2d 677 (1971).

■ The third requirement is typicality of the claims or defenses of the class representatives. The essence of the claim of the class is that it does not receive the proper amount of either reimbursement or deduction for its child care expenses. This is also exactly the claim of the individual representatives.[12]

■ The fourth prerequisite to class certification is adequacy of representation. This depends on two factors, whether plaintiffs' attorneys are qualified and able to competently conduct the litigation, and whether plaintiffs have interests antagonistic to those of the proposed class. *Susman v. Lincoln American Corp.*, 561 F.2d 86, 90 (7th Cir. 1977). Nothing in the record indicates that there is any question but that plaintiffs fulfill these two requirements.

■ Since the four prerequisites to class certification are satisfied, the question whether this is a proper class under Fed.R. Civ.P. 23(b)(2) is the only one that remains.[13]

Rule 23(b)(2) states that a class action which meets the four prerequisites is maintainable if

the party opposing the class has acted or refused to act on grounds generally appli-

---

class members. This new class is therefore readily identifiable, simply by reference to the objective conduct of the parties. Because of this, the class is sufficiently definite. *See, e.g., Alliance to End Repression v. Rochford*, 565 F.2d 975, 977–78 (7th Cir. 1977).

12. While defendants do not raise the point, it is worth noting that there may be a problem as to plaintiff Brooks. She utilizes the services of an unlicensed child care provider. The pleadings indicate that this may raise a defense to her claim not available against other class members. *See* Answer to Amended Complaint ¶¶ 19, 21–22. Where it is predictable that a major focus of litigation will be on a defense unique to a named plaintiff or a small subclass, then the named plaintiff is not a proper class representative. *Koos v. First National Bank of Peoria*, 496 F.2d 1162, 1164 (7th Cir. 1974). The court raises this problem on its own motion because of its duty to protect absent class members. Should this problem develop, it can be addressed by subclassing. See note 14 *infra.*

13. Defendants argue that certification is improper because the proposed class "overlaps" with classes proposed in other litigation in this district. One asserted overlap is with a proposed class in a case which ended with a consent decree before Judge Flaum, 77 C 4218. The other is a proposed class in a case pending before Judge Aspen, 81 C 5776. However, there is no reason to conclude the asserted overlap is a bar to certification, at least until defendants plead res judicata or collateral estoppel resulting from the judgment in either or both of these cases. Lack of overlap is nowhere mentioned as a requirement for class status in rule 23, and once the prerequisites which are mentioned in the rule are satisfied, certification is required. *See Fujishima v. Board of Education*, 460 F.2d 1355, 1360 (7th Cir. 1972). In any event, there is no overlap. The proposed classes in the cited cases consisted of persons declared ineligible for AFDC. The proposed class here consists of AFDC recipients.

cable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole . . . .

There is no dispute that the requirements of (b)(2) are met in this case. Defendants' refusal to fully reimburse child care expenses for class members in full up to October 1, 1981, and in full up to $160 thereafter is a refusal to act generally applicable to the class, and if improper, it justifies injunctive relief with respect to the class as a whole.[14]

Plaintiff's motion for an order that this case be certified as maintainable as a class action is granted. The court hereby orders that this case will proceed as a class action on behalf of all AFDC recipients in Illinois who since April 1, 1980, have been, are, or will be employed, and who have incurred, are incurring, or will incur reasonable employment-related expenses which defendants have failed or refused to reimburse, in their actual amount prior to October 1, 1981, and in their actual amount up to $160 per month as of October 1, 1981.

---

**14.** Thus far, the parties have not suggested a need for subclassing. As noted above, class members who receive child care services from unlicensed child care providers may present a legal issue unique from the rest of the class. From the pleadings, it does not appear that either the name plaintiffs or members of the proposed class may have antagonistic interests, however, we alert the parties to the possibility that antagonistic interests, or major issues unique to a small subclass may arise. At this point, however, there is no indication of conflict between class members, so subclassing seems unnecessary. *See* 7 C. Wright & A. Miller, Federal Practice and Procedure § 1768 (1972). There also appears to be no need to create pre and post October 1, 1981 subclasses, since defendants' refusal to reimburse or deduct child care expenses apparently has been unaltered throughout the period at issue in this case.

Defendants object to the use of April 1, 1980 as the starting date for class, since the instant lawsuit was not filed until May 29, 1981. Defendants claim this is somehow an attempt to circumvent the eleventh amendment. However, for this period, plaintiffs seek only notice relief, which is permitted by the eleventh amendment. Defendants raise no other objection to the use of the April 1, 1980 starting date. Therefore, the date is not improper, and can be used.