Stanley M. GROSSMAN, Cathy Chester, and Kenneth Frohlick, Plaintiffs,

v.

WASTE MANAGEMENT, INC., Dean L. Buntrock, H. Wayne Huizenga, Peter H. Huizenga, Lawrence Beck, Donald F. Flynn, and Phillip B. Rooney, Defendants.

No. 83 C 2167.

United States District Court, N.D. Illinois, E.D.

Feb. 6, 1984.

Ronald L. Futterman, Hartunian, Futterman & Howard Chtd., Chicago, Ill., Wolf, Pepper, Ross, Wolf & Jones and Milberg, Weiss, Bershad, Specthrie & Lerach, New York City, Kohn, Milstein, Cohen & Hausfeld, Washington, D.C., for plaintiffs.

John Rotunno, Francis J. Higgins, William Carney, Bell, Boyd & Lloyd, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

PRENTICE H. MARSHALL, District Judge.

Plaintiffs have moved under Fed.R.Civ.P. 23(b)(3) to certify two classes in this securities fraud action. Plaintiffs acquired stock of defendant Waste Management, Inc. ("Waste Management") either by purchase or, in the case of plaintiff Cathy Chester, by an exchange of shares of Chem-Nuclear, Inc. for Waste Management shares in the October 28, 1982 merger of the two companies. Waste Management is a corporation whose activities include the disposal and transportation of chemical wastes.

The complaint alleges that defendants omitted from various corporate reports and releases information concerning problems and potential problems with environmental regulatory authorities, and that those reports and releases painted an unduly optimistic picture of Waste Management's economic outlook and mischaracterized the extent of its compliance with the environmental laws. This series of omissions and/or misrepresentations allegedly began with the issuance of Waste Management's 1981 Annual Report on March 31, 1982. The challenged course of conduct included an allegedly misleading prospectus issued in connection with the proposed Waste Management—Chem Nuclear merger. The effect of Waste Management's concealment of its problems and potential problems, plaintiffs allege, was to inflate the market price of its stock. Thus plaintiffs acquired the stock at a price higher than it would have been had Waste Management made full disclosure. This house of cards came crashing down on March 21, 1983, when, plaintiffs allege, it was publicly revealed for the first time that Waste Management had been charged with violating environmental regulations by authorities in several states and by the federal government. This resulted in a drastic drop in the price of Waste Management's stock.

The proposed classes relate to plaintiffs' claims under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1976), and § 11 of the Securities Act of 1933, 15 U.S.C. § 77k (1976).[1] For their § 10(b) class, plaintiffs propose the following definition:

All persons, other than the defendants and their immediate families, subsidiaries

---

1. Section 10(b), and Securities Exchange Commission ("SEC") rule 10b–5 promulgated under § 10(b), see 17 C.F.R. § 240.10b–5 (1983), prohibit deception in connection with the purchase or sale of securities. Section 11 creates civil liability for filing a misleading registration statement with the SEC.

and affiliates, who purchased the common stock of Waste Management (including receiving such stock by exchange of other securities for such stock) during the period from March 31, 1982 through March 18, 1983 inclusive and who sustained damages as a result thereof.

For their § 11 class, plaintiffs propose the following:

All persons, other than the defendants and their immediate families, subsidiaries or affiliates, who were shareholders of Chem-Nuclear Systems, Inc. and who acquired Waste Management common stock pursuant to the October 28, 1982 merger of Chem-Nuclear into a subsidiary of Waste Management, and who sustained damages as a result thereof.

All three plaintiffs are proposed as representatives for the § 10(b) class; plaintiff Chester is the proposed § 11 class representative.

■ To determine whether the classes should be certified, we must examine whether the members of the classes are so numerous that joinder of all members is impracticable; whether there are questions common to the class and whether those common questions predominate over questions affecting only individual members; whether the claims of the proposed representatives are typical of those of the class; whether the representatives will fairly and adequately protect the interests of the class; and whether a class action is superior to other available methods for the fair and efficient adjudication of the controversy. See Fed.R.Civ.P. 23(a), (b)(3). We begin with the proposed § 10(b) class.

## SECTION 10(B) CLASS

A threshold issue raised by defendants with respect to the § 10(b) class is the sufficiency of the class definition. Defendants argue that the proposed class definition is vague due to the requirement that a class member have "sustained damage." Defendants assert that in light of this language class membership cannot be determined without adjudication of the merits and that certification is therefore improper.

See, e.g., Simpson v. Miller, 93 F.R.D. 540, 545 & n. 11 (N.D.Ill.1982); Metcalf v. Edelman, 64 F.R.D. 407, 409 (N.D.Ill.1974). Plaintiffs point out, however, that classes including all purchasers of given securities or all purchasers who sustained damages are fairly typical in securities fraud litigation. See, e.g., Sirota v. Solitron Devices, Inc., 673 F.2d 566 (2d Cir.1982); Levit v. Katchmark, No. 82–3955 (W.D.Pa. May 13, 1983); Issen v. GSC Enterprises, Inc., 522 F.Supp. 390, 404 (N.D.Ill.1981).

■ Plaintiffs state that the "sustained damage" language is superfluous and can be deleted. Defendants respond that this would impermissibly broaden the class to include at least some purchasers who do not have claims for damages. Defendants' position with respect to the class definition amounts to "heads we win, tails you lose." If their arguments were generally accepted it is unlikely that a class could be certified in any securities fraud action involving fraud resulting in an inflation of the market price of stock. This would conflict with the purpose of the securities laws in "promot[ing] free and honest securities markets," Shores v. Sklar, 647 F.2d 462, 470 (5th Cir.1981) (en banc), cert. denied, —— U.S. ——, 103 S.Ct. 722, 74 L.Ed.2d 949 (1983), and with the strong policy favoring class actions in securities fraud actions. See King v. Kansas City Southern Industries, Inc., 519 F.2d 20, 26 (7th Cir.1975). Whether and to what extent the class members sustained damages is not an issue at the class certification stage. See Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). Moreover, where a class is identifiable by reference to the objective conduct of the parties, certification is proper. Simpson v. Miller, 93 F.R.D. at 546 n. 11. Though we need not delve into plaintiffs' damage theory at this stage, it is at least possible that plaintiffs will seek to show that the price of Waste Management stock was inflated due to defendants' conduct and that the damages of an individual plaintiff are determined by determining the "true" price at the time of

purchase and comparing it with the inflated price. Thus, if an individual bought at 30 but the "true" price would have been 20, and then sold the stock at 10, her damages amount to 10 per share. While it is conceivable that persons who both bought and sold at an inflated price are not properly class members, that too will be determinable by reference to the parties' objective conduct, i.e., the dates of purchase and sale. In short, the proposed class definition is sufficient to meet the requirement that a "readily identifiable class ... exist." *Simpson v. Miller,* 93 F.R.D. at 545.

■ The test of numerosity is whether the class is so numerous that joinder is impracticable. *See* Fed.R.Civ.P. 23(a)(1). The fact that the number of class members cannot be determined with precision therefore does not defeat certification. *Vergara v. Hampton,* 581 F.2d 1281, 1284 (7th Cir. 1978), *cert. denied,* 441 U.S. 905, 99 S.Ct. 1993, 60 L.Ed.2d 373 (1979). Plaintiffs state that the "IDL Daily Stock Price Index" for the class period shows that approximately 27 million shares of Waste Management common stock were traded during the period.

Defendants argue that those who purchased the stock at less than the price to which it declined after March 21, 1983 (allegedly $41.675 per share) should not be class members and that the class should be redefined accordingly, since those purchasers did not suffer damages. This argument is easily answered. Those who bought at less than $41.675 nevertheless bought, if plaintiffs' allegations are true, at an inflated price and therefore profited less than they otherwise would have, absent the alleged wrongdoing, when they sold. Thus, these purchasers are properly class members.

Defendants also argue that since the alleged source of plaintiffs' damage is the decline in the price of Waste Management's stock after March 21, 1983, only those shareholders who held their shares until at least that date are properly class members because others sold at the allegedly inflated price. Though defendants' argument is based on plaintiffs' own representation in their Memorandum in Support of Class Certification, *id.* at 5 (which itself is based on the amended complaint ¶ 51), as to the events that occasioned plaintiffs' injury, plaintiffs argue that defendants' attempt to redefine the class impermissibly asks us to establish the measure or theory of damages before the proper time has come to undertake that analysis. We agree. We do not yet know and do not at this stage of the litigation have occasion to examine exactly how the alleged nondisclosures and/or misrepresentations affected the market price of Waste Management's stock during the class period. We note, however, that defendants' contention may be a proper subject for a later motion to alter the class definition if developments so warrant. *See* Fed.R.Civ.P. 23(c)(1).

Though we do not now have before us any information as to the number of persons who bought Waste Management stock during the class period, as opposed to the number of shares traded during that period, we are entitled to make "common sense assumptions" in order to support a finding of numerosity. *See, e.g., Wolgin v. Magic Marker Corp.,* 82 F.R.D. 168, 171 (E.D.Pa. 1979). Indeed, an assumption that the class members are *not* so numerous as to make joinder impracticable would be, in light of the number of shares traded during the class period, ridiculous.[2] *See Markewich v. Ersek,* 98 F.R.D. 9, 10 n. 1 (S.D.N.Y.1982) (claim that 2.5 million shares were traded during class period sufficient under Fed.R. Civ.P. 23(a)(1)). We find that the proposed § 10(b) class meets the test of numerosity in rule 23(a)(1).

It is essentially undisputed that common issues of law and fact exist in this case, e.g., whether defendants made material misrepresentations or omitted material facts, whether defendants acted with the requi-

---

**2.** Under the "common sense assumption" test, it is likely that enough of the purchasers during the class period held their shares until March 21, 1983 to make a finding of sufficient numerosity proper even were we to have redefined the class as defendants suggest.

site scienter, *see Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), and whether defendants' conduct inflated the price of Waste Management's stock. The real question with respect to common issues is whether those issues predominate over issues affecting only individual class members.

Defendants raise several arguments in support of their contention that individual issues predominate over common issues. They state that proof concerning scienter may differ over the class period; that due to the changing underlying factual situation, proof that the information disseminated by defendants was misleading and that it was material differs as to different purchasers; and that individual issues of reliance exist. In order to decide whether plaintiffs meet the predominance requirement, we must examine to a certain extent their theory of liability.

It is not entirely clear from the complaint whether plaintiffs seek to rely on a "misrepresentations" theory, an "omissions" theory, a mixed misrepresentations-omissions theory, or a "fraud on the market" theory. However, in their reply brief on the class certification issue, plaintiffs state that "this is a fraud on the market case . . . ." Reply Memorandum in Support of Motion for Class Certification at 13.[3] Therefore, we will analyze the predominance question as it relates to that theory of liability.

█ The fraud on the market theory has been accepted by many courts and by other judges in this district. *See, e.g., Panzirer v. Wolf*, 663 F.2d 365, 368 (2d Cir.1981), *vacated as moot*, 459 U.S. 1027, 103 S.Ct. 434, 74 L.Ed.2d 594 (1982); *Blackie v. Barrack*, 524 F.2d 891, 906–08 (9th Cir.1975), *cert. denied*, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976); *HSL, Inc. v. Daniels*, [Current] Fed. R.Sec.L.Rep. (CCH) ¶ 99,557 at 97,197–98 (N.D.Ill.1983) (Roszkowski, J.); *McNichols v. Loeb Rhoades & Co.*, 97 F.R.D. 331 at 336 [Current] Fed.Sec.L.Rep. (CCH) ¶ 99,463 at

96,642–46 (N.D.Ill.1982) (Getzendanner, J.) (assuming validity of theory); *Mottoros v. Abrams*, 524 F.Supp. 254, 258–60 (N.D.Ill. 1981) (Grady, J.); *In re LTV Securities Litigation*, 88 F.R.D. 134, 142–46 (N.D.Tex. 1980). *See also, e.g.*, Note, *The Fraud-on-the-Market Theory*, 95 Harv.L.Rev. 1143 (1982). Under this theory, "a plaintiff . . . need not allege individual reliance but only that the plaintiff relied upon the integrity of the market price of the security which was distorted by the impact of the particular misstatements." *LTV*, 88 F.R.D. at 142. Reliance is presumed once it is established that the material misrepresentation affected the price of stock traded on the open market. *See Blackie v. Barrack*, 524 F.2d at 906; *LTV*, 88 F.R.D. at 142. The theory can also be viewed as an extension of the presumption of reliance in "omission" cases, *see Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153–54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972), to misrepresentation cases involving market transactions. *LTV*, 88 F.R.D. at 142.

The rationale for extending the presumption of reliance to fraud on the market cases was explained in *Blackie v. Barrack*:

A purchaser on the stock exchanges . . . relies generally on the supposition that the market price is validly set and that no unsuspected manipulation has artificially inflated the price, and thus indirectly on the truth of the representations underlying the stock price—whether he is aware of it or not, the price he pays reflects material misrepresentations. Requiring direct proof from each purchaser that he relied on a particular representation would defeat recovery by those whose reliance was indirect, despite the fact that the causational chain is broken only if the purchaser would have purchased the stock even had he known of the misrepresentation.

524 F.2d at 907. According to the court in *LTV*,

---

3. *See also* Plaintiffs' Response to . . . Question Posed by the Court at 4 n. 7 ("reliance is presumed under the claims and theories advanced by plaintiffs"). Reliance is presumed in

a "fraud on the market" case. *See, e.g., Blackie v. Barrack*, 524 F.2d 891, 906–08 (9th Cir. 1975), *cert. denied*, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976).

[t]he presumption can be considered as recognition of the market's role as a transmission belt linking the misrepresentation and the individual purchaser or seller . . . In face-to-face transactions, the inquiry into an investor's reliance upon information is into the subjective pricing of that information by the investor. With the presence of a market, the market is interposed between seller and buyer and, ideally, transmits information to the investor in the processed form of a market price. Thus the market is performing a substantial part of the valuation process performed by the investor in a face-to-face transaction. The market is acting as the unpaid agent of the investor, informing him that given all the information available to it, the value of the stock is worth the market price.

*LTV,* 88 F.R.D. at 143.

We accept for present purposes that the fraud on the market theory is valid in this circuit,[4] and therefore for purposes of this motion plaintiffs are entitled to a presumption of reliance. As defendants point out, however, the presumption may be rebutted by proof that the plaintiff purchased in reliance on factors other than the market. *See, e.g., HSL,* [Current] Fed.Sec.L.Rep. at 97,199; *LTV,* 88 F.R.D. at 143–44. We agree with Judge Getzendanner, who held in *McNichols v. Loeb Rhoades & Co.,* 97 F.R.D. at 339 & n. 15, [Current] Fed.Sec.L. Rep. at 96,645 & n. 15, that though reliance or nonreliance may vitiate the typicality of a named plaintiff's claims in a fraud on the market case, given the presumption of reliance it is not an "individual" issue that would defeat certification on predominance grounds. *See also Blackie v. Barrack,* 524 F.2d at 907 n. 22 (since in most open market transactions defendant will be unable to prove that plaintiff was indifferent to a material fraud, reliance is not an issue for majority of class).

Defendants' argument concerning the changing factual situation that underlies the alleged misrepresentations is also without merit. Plaintiffs have alleged a scheme involving a common nucleus of fraud within several representations or omissions. The mere fact that these representations occurred over a period of time is alone insufficient to make individual issues of materiality and scienter predominate over common issues. Classes have been certified in similar cases over similar objections. *See, e.g., Hochschuler v. G.D. Searle & Co.,* 82 F.R.D. 339, 349 (N.D.Ill.1978) (citing cases) (class of purchasers of stock over two year period certified). As in *Hochschuler,* there is no allegation by defendants that their representations varied significantly over the class period.[5] In addition, though defendants contend that information concerning some of the alleged nondisclosures was made public during the class period, that is not an issue we can determine on this record or at this point in the lawsuit; as far as it appears now, plaintiffs' theory seems to be that if the factual situation changed at all, it was a matter of defendants adding more nondisclosures and misrepresentations onto those previously made. Thus, if there was any change in the "materiality" of the cumulative omissions and misrepresentations, it was a change from immateriality to materiality. Though this might require a redefinition of the class later in the lawsuit, it does not defeat certification now. Further, if it later appears that at some point the character of defendants' representations changed significantly, subclassing may be necessary. For the present, however, we

---

4. The Seventh Circuit has not addressed the validity of the theory. It appears that defendants attack the validity of the theory in motions for summary judgment now pending as to the claims of the named plaintiffs. We do not think it appropriate to address the merits of plaintiffs' case at this time. *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974).

5. Defendants rely heavily on *J.H. Cohn & Co. v. American Appraisal Assocs., Inc.,* 628 F.2d 994 (7th Cir.1980), in which the court, on mandamus review, refused to overturn a district court's denial of class certification. In that case, a period nearly three times as long as that here was involved; moreover, as the court noted, "[m]andamus relief is reserved for extreme situations." *Id.* at 997. *J.H. Cohn* does not govern this case.

think that the common issues predominate over the individual ones.[6]

■ Rule 23(a)(3) requires that the claims of the named plaintiffs be typical of those of the class. This means that the putative class representative must be a class member, must have no interest antagonistic to those of the class, and must have suffered the same injury as the other class members. *See, e.g., General Telephone Co. v. Falcon,* 457 U.S. 147, 102 S.Ct. 2364, 2370, 72 L.Ed.2d 740 (1982). The Seventh Circuit has held that a named plaintiff is not a proper class representative "[w]here it is predictable that a major focus of the litigation will be on an arguable defense unique to the named plaintiff or a small subclass." *Koos v. First National Bank,* 496 F.2d 1162, 1164 (7th Cir.1974). Here defendants' primary argument appears to be that the named plaintiffs purchased or acquired Waste Management stock in reliance on factors extraneous to the market and that the defense of non-reliance therefore applicable to them may become a major focus of this lawsuit.

As we have noted, in a fraud on the market case, proof that the plaintiff relied on factors extraneous to the market may serve to rebut the presumption of reliance; if defendants can show that this defense is arguably applicable to plaintiffs and inapplicable to the remainder of the class, plaintiffs' claims are not typical under *Koos. See, e.g., Markewich v. Ersek,* 98 F.R.D. 9, 10–11 (S.D.N.Y.1982) (reliance on recommendation of broker who had "inside" information); *McNichols,* 97 F.R.D. at 340, [Current] Fed.Sec.L.Rep. (CCH) at 96,645–49 (reliance on misrepresentations by one allegedly part of scheme to defraud); *Beissinger v. Rockwood Computer Corp.,* 529 F.Supp. 770, 786–87 (E.D.Pa.1981) (reliance

upon recommendation of a comptroller of a client of plaintiff's accounting firm); *Kline v. Wolf,* 88 F.R.D. 696, 699–700 (S.D.N.Y. 1981) (one plaintiff who relied solely on husband's recommendation and another who was a speculative trader); *Greenspan v. Brassler,* 78 F.R.D. 130, 132–33 (S.D.N.Y. 1978) (purchase based on recommendation of plaintiffs' brother, a professional investor who based recommendation on generalized faith in the type of investment in question). However, if plaintiff relied on statements of third parties that merely reiterated, digested, or reflected the misstated information that forms the basis of the securities fraud claims, plaintiff has not relied on "factors wholly extraneous to the market." *See Sargent v. Genesco, Inc.,* 75 F.R.D. 79, 85 (M.D.Fla.1977). Such a rule is necessary if the salutary purposes of the "fraud on the market" theory are not to be gutted, for it is likely that many investors rely upon information digested by others and not simply on "the market" as such.

We think that plaintiff Chester is likely to be subject to a colorable nonreliance defense with respect to her § 10(b) claim. Among the evidence now before us is deposition testimony suggesting that though she acquired her Waste Management stock via the Chem-Nuclear merger, she voted against the merger and then exchanged her shares for Waste Management shares because she felt she had to. Thus, it is possible that a nonreliance defense as to Chester may become a focus of the litigation, given the somewhat peculiar circumstances of her acquisition of the stock and the suggestion that she did not "rely" on anything.[7]

As to Grossman and Frohlick, the suggestion is made that they purchased based on the recommendation of a company involved

---

**6.** Defendants argue that in light of what they consider significant public disclosure during the class period, plaintiffs' fraud on the market theory is not viable, since one of the underpinnings of that theory is that the market quickly absorbs all available information. To deny certification based on that factor would involve a premature examination of the merits; however, we invite defendants to present evidence and arguments in support of their contention while

briefing the motions for summary judgment now pending.

**7.** We do not adjudicate the merits of this defense here. Further, depending on the result of the pending summary judgment motion against Chester, future developments might affect our conclusion that Chester's claims are not typical of those of the class.

in the investment business. We do not know what information formed the basis for the analyst's recommendation.[8] There is also evidence that Grossman reviewed a summary of information concerning Waste Management prepared by Standard & Poor's and that the summary contained information taken from or based upon Waste Management's own publications. As to Frohlick, there is evidence that he reviewed the Value Line Investment Survey's summary pertaining to Waste Management before purchasing the stock and that Value Line contains or is based at least in part on "market" information.

To the extent that Grossman and Frohlick relied in whole or in part on the recommendation of persons or businesses who perform the task of digesting information available to "the market" and making recommendations to potential investors based on that information, defendants have not presented any evidence showing that that gives rise to a colorable defense to who the class is not also subject.[9] In particular, defendants have not forwarded any evidence that this is a defense to which not many of the class members may be subject. We bypass for purposes of this motion the precise manner in which reliance on a third party may affect the ability of a plaintiff to rely on a fraud on the market theory, except to note that under the *Sargent* case cited at p. 788 *supra,* reliance on a third party does not necessarily lead to a finding that a plaintiff cannot maintain a claim under that theory. For present purposes the defense of nonreliance is not one that appears to be unique to Grossman and Frohlick.

Defendants next argue that Grossman and Frohlick are sophisticated investors who may not be as justified in relying on material misrepresentations or omissions as other class members, thus making them subject to a unique defense concerning their due diligence. See, *J.H. Cohn & Co. v. American Appraisal Associates, Inc.,* 628 F.2d 994, 998–99 (7th Cir.1980). However, the "sophisticated" plaintiff in *J.H. Cohn* was a mutual fund. "Even assuming that [plaintiffs are] more sophisticated than the average investor, [they are] surely in a different position than a mutual fund for the purpose of serving as a class representative." *Ridings v. Canadian Imperial Bank,* 94 F.R.D. 147, 152 (N.D.Ill.1982). Moreover, if plaintiffs are correct that the defendants misrepresented certain facts and omitted others, that information was no more available to a "sophisticated" investor than to a "normal" one. *Id.* (citing *Epstein v. Weiss,* 50 F.R.D. 387, 392–94 (E.D.La.1970)). The named plaintiffs' sophistication, even if proved, does not in our view subject them to a unique defense such that their claims are not typical.[10]

Defendants' other objections to typicality are also without merit. We find that Grossman's and Frohlick's claims are typical of those of the class under Fed.R.Civ.P. 23(a)(3).

The final inquiry under rule 23(a) is whether the named plaintiffs are adequate class representatives. To satisfy this requirement, contained in rule 23(a)(4), the interests of the class representative must coincide with those of the rest of the class, and the class representative and his attorney must be prepared to prosecute the action vigorously and with adequate financial

---

**8.** The basis may be contained somewhere in the hundreds of pages of depositions filed by the parties on the class certification issue. It is not, however, contained in the designations and counterdesignations the parties filed in an effort to cull the important information from those depositions. We are not inclined to read the depositions in their entirety at this point in the litigation.

**9.** We have not in reaching this conclusion improperly placed the burden of persuasion on defendants. We think that under *Koos,* the burden of going forward with evidence of atypicality lies with the party opposing certification. That burden consists of presenting evidence with respect to two issues: that plaintiff is subject to a defense, and that the defense is unique to plaintiff.

**10.** We of course cannot and do not preclude defendants from attacking plaintiffs' claims based on the "sophisticated investor" defense or any other colorable defense.

commitment. *Ridings,* 94 F.R.D. at 147; *Issen v. GSC Enterprises, Inc.,* 522 F.Supp. 390, 404 (N.D.Ill.1981). To the extent that the inquiry under the "typicality" requirement of rule 23(a)(3) overlaps the first part of the rule 23(a)(4) analysis with respect to the commonality of interests of the class representative and the class, we need not repeat our earlier discussion of that issue. Defendants have, however, raised other arguments in support of their contention that Grossman and Frohlick are not adequate class representatives.

Defendants first argue that Grossman and Frohlick are not adequate class representatives because of their conduct and that of their counsel at their depositions. First, defendants contend that plaintiffs violated a discovery order entered by Magistrate Jurco by either failing to provide a financial statement at their depositions or providing an inadequate financial statement. Plaintiffs dispute defendants' arguments; it appears that these disputes were also aired at the depositions. For the present, we think it best to defer to Magistrate Jurco. If the magistrate thinks that the plaintiffs violated her order and that their violation is not excusable or attenuated by mitigating circumstances, we will consider defendants' objections to the plaintiffs' class representative status. We see nothing in plaintiffs' conduct that in and of itself mandates a finding that they are inadequate representatives, and we will thus await illumination of this issue by Magistrate Jurco.

The same applies to defendants' objections to the allegedly obstructionist conduct by the parties and their lawyers at their depositions. We note that this case has been hotly contested from the outset, on both sides. Tempers seem to have flared at times during the depositions in question. For the present, however, we do not feel that the conduct of plaintiffs or their counsel requires a finding that they will not adequately represent the class, and we therefore defer to whatever examination Magistrate Jurco may make as to the advisability of imposing sanctions upon plaintiffs and their counsel. If Magistrate Jurco finds that sanctions are in order, we will reconsider our finding with respect to adequacy of representation.

Next, defendants argue that plaintiffs filed this action without investigation and are unfamiliar with the facts of the case. It appears, on the basis of the deposition testimony cited by plaintiffs, that plaintiffs contacted their lawyers after articles appeared in various newspapers concerning lawsuits filed by environmental authorities against Waste Management. Since the gravamen of the complaint is that Waste Management concealed certain information, we do not find it surprising that plaintiffs do not know all the particulars of their claims. That is probably why they hired lawyers rather than proceeding *pro se.* We are satisfied that plaintiffs are aware of what the lawsuit is about and are informed of its progress by counsel. Plaintiffs need not know all the ins and outs of a case in order to be proper class representatives; they are entitled to rely upon their lawyers in gathering the evidence to be used at trial.

Defendants also attack Grossman's relationship with the law firm representing him in this action, noting that he is closely affiliated with the firm, has had fee-sharing relationships with it in the past, and manifested at his deposition that he could not distinguish between his role as a client and that of an attorney. However, other testimony establishes that Grossman will not share in any fee award here, and there is certainly nothing wrong with plaintiff hiring a law firm in which he has confidence based on past dealings. We have examined the cited pages from Grossman's deposition, and though he may have bristled at times, there is nothing to indicate that he does not realize that he is the client and not the lawyer. We fear that defendants may be exhibiting the early symptoms of "brief writer's hyperbole syndrome." *See United States ex rel. Sims v. Sielaff,* 563 F.2d 821, 824 n. 6 (7th Cir.1977).

Finally, the fact that Grossman and Frohlick purchased late in the 12 month class period does not make them inadequate class

representatives. *See Blackie v. Barrack,* 524 F.2d at 909–10; *Dura-Bilt Corp. v. Chase Manhattan Corp.,* 89 F.R.D. 87, 99–100 (S.D.N.Y.1981) (analyzing same question as an issue of typicality).[11]

■ In conclusion, we find that the requirements of rules 23(a) and (b)(3) are satisfied. Plaintiffs Grossman and Frohlick are proper representatives of the class we hereby certify of

> All persons, other than defendants and their immediate families, subsidiaries and affiliates, who purchased the common stock of Waste Management (including receiving such stock by exchange of other securities for such stock) during the period from March 31, 1982 through March 18, 1983 inclusive and who sustained damages as a result thereof.

## SECTION 11 CLASS

As noted earlier, n. 1 *supra,* § 11 of the Securities Act of 1933 creates civil liability for filing a misleading registration statement with the Securities Exchange Commission. The allegedly misleading statement here is the September 1982 prospectus issued to Chem-Nuclear shareholders in connection with the proposed merger with Waste Management.

Plaintiffs' representation that there were 1900 shareholders of record of Chem-Nuclear as of September 24, 1982 is sufficient to establish the requisite numerosity under Fed.R.Civ.P. 23(a)(1). Among the common questions under rule 23(a)(2) is whether the prospectus was misleading and violated § 11. The only way in which proposed class representative Chester's claims may be atypical of those of the class is that she voted against the merger and allegedly did not rely on the prospectus; however, since reliance is not a prerequisite of a § 11 action, *see, e.g., Emmi v. First-Manufacturers National Bank,* 336 F.Supp. 629, 634 (D.Me.1971), there appears to be no reason to find plaintiff's claims atypical under rule 23(a)(3). Nor have defendants suggested that individual issues predominate over common issues or that a class action is not superior to other methods for adjudicating the controversy. *See* Fed.R.Civ.P. 23(b)(3).

■ The only serious objection raised to certification of a § 11 class concerns the adequacy of representation of the class by Chester. A proposed class representative's financial responsibility is a relevant factor in determining adequacy of representation, particularly in the case of a proposed 23(b)(3) class where the plaintiff must finance the sending of notice to the class. *See Schatzman v. Talley,* 91 F.R.D. 270, 273 (N.D.Ga.1981). After briefing was closed, defendants informed us in writing that they had been told by Chester's lawyer that she had lost her previous job and was unemployed. *See* Motion for Leave to Supplement Defendants' Designation of Deposition Excerpts (filed Dec. 7, 1983). This calls into question Chester's ability to finance the costs of notice.

■ As the court pointed out in *Schatzman,* we must tread lightly in this area, for if financial capacity is treated as controlling poorer claimants will be prevented from maintaining class actions under rule 23(b)(3). *Schatzman,* 91 F.R.D. at 273 n. 2. *See* A. Miller, *An Overview of Federal Class Actions: Past, Present and Future* 32 (Fed. Jud.Ctr.1977) (ability to fund case should not be determinative factor), cited in *Roper v. Consurve, Inc.,* 578 F.2d 1106, 1112 n. 4 (5th Cir.1978), *aff'd sub nom. Deposit Guaranty National Bank v. Roper,* 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980). Thus, courts have permitted counsel to advance the costs of notice to the named plaintiffs as long as sufficient arrangements for repayment are made. *Roper,* 578 F.2d at 1112 (citing cases). In light of Chester's

---

11. In addition, defendants' attack on plaintiffs' credibility, based on deposition testimony, is premature. We do not now have occasion to determine whether apparent inconsistencies with the complaint and/or legal theory of plaintiffs warrant dismissal of named plaintiffs' claims. Nor are the inconsistencies of sufficient import to call plaintiffs' representative status into question.

We also find that a class action is the best method of handling this controversy. Fed.R. Civ.P. 23(b)(3)(A–D).

financial situation, we think it proper to defer final ruling on class certification until Chester and her lawyers have informed us of the manner in which notice will be financed and the arrangements for repayment if counsel plan to advance the costs of notice.

Defendants' other objections to the adequacy of Chester's representation are without merit. What we have said with regard to Grossman's and Frohlick's representative status applies with respect to Chester as well. One cannot expect an ordinary owner of stock to know the basis of a potential securities fraud claim before going to a lawyer; rather, in most cases it is likely that the plaintiff will know only that she has been wronged in some manner. It is not unreasonable to permit such a person to leave it up to her lawyer to put flesh on the bare bones of her claim. We are satisfied that plaintiff is consulted and kept up to date adequately and that her former employment by one of plaintiffs' law firms does not give rise to any colorable allegations of impropriety or inadequacy of representation. In sum, except for her financial status Chester is an adequate class representative.

Upon sufficient representations by plaintiff and her counsel as to the payment of the cost of notice to the class, we will certify the § 11 class proposed by plaintiffs. Counsel are to appear in court at 9:30 a.m. on February 24, 1984 to inform the court as to the manner in which notice will be financed and the arrangements for repayment if counsel plan to advance the costs of notice.