Stephen M. WUCSINA, Mark R. Van Bruaene, Louis W. Parks, Dennis Van Bruaene, Mona Holdeman, Bruce Fisher, Robert M. Clayton, William Thornton, James L. Reed, Robert Shaw, John Kuespert, obo themselves and others, Plaintiffs,

v.

RELIANCE ELECTRIC COMPANY dba Dodge Manufacturing Company, Dodge Manufacturing Company, United Steelworkers of America AFL–CIO & CLC Local 1191, United Steelworkers of America AFL–CIO & CLC, Defendants.

Louis W. PARKS, Stephen M. Wucsina, Mark R. Van Bruaene, Dennis Van Bruaene, Mona Holdeman, Bruce Fisher, Robert M. Clayton, William Thornton, James L. Reed, Robert Shaw, John Kuespert, obo themselves and others, Plaintiffs,

v.

UNITED STEELWORKERS OF AMERICA, United Steelworkers of America Local No. 1191, David Cass, Chris E. Lovitt, Gene Lee, Larry A. Dutoi, Clay Pierce, Ronnie L. Armour, Richard A. Stuff, James T. Stuart, Eugene A. Chlebowski, Defendants.

Civ. A. Nos. S83–0112, S83–0263.

United States District Court,
N.D. Indiana,
South Bend Division.

Sept. 29, 1986.

John C. Hamilton, South Bend, Ind., for plaintiffs.

Rudolph L. Milasich, Jr., Asst. Gen. Counsel, United Steelworkers of America, Pittsburgh, Pa., and Allan J. Mindel, Merriville, Ind., Bruce G. Hearey, Cleveland, Ohio, Franklin A. Morse, II, David R. Melton, Gregory L. Kelly, South Bend, Ind., for defendants.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

This case is before the court on the named plaintiffs' motion to certify a plaintiff class pursuant to Rule 23 of the Federal Rules of Civil Procedure. The jurisdiction of the court is under 28 U.S.C. § 1331 and is based on 29 U.S.C. §§ 185, 411 and 501.

The complaint in *Wuscina v. Exxon Corp.*, S 83–0112 was filed on March 14, 1983 and the complaint in *Parks v. United Steelworkers of America*, S 83–0263 was filed on June 10, 1983. Those two cases were consolidated on June 21, 1983. On that date, the court also set the first general discovery cutoff as March 1, 1984. At the December 16, 1983 pretrial conference a distinct class action discovery cutoff was set for June 29, 1984. The plaintiffs requested and were granted an extension of the general discovery cutoff until August 31, 1984. Further, during the November 30, 1984 pretrial conference, the court extended discovery until July 1, 1985. An examination of the record in this case reveals that no discovery was requested, conducted or filed from November 30, 1984 through July 1, 1985. In fact nothing was filed in this case until October 31, 1985, when the plaintiffs requested another extension of discovery, which was denied based on the lack of diligence apparent in the record before this court.

During a pretrial conference conducted on April 25, 1986, the plaintiffs were given until July 1, 1986 to file any motions for class certification. The plaintiffs filed their motion, affidavits, and memoranda in support of their motion for class certification on July 1, 1986. The parties filed a stipulated motion to extend time until August 15, 1986, to file responses opposing class certification which was granted. Subsequently, on July 29, 1986, defendant Reliance Electric (Dodge) filed a preliminary memorandum in opposition to class certification. On August 15, 1986, the defendants filed memoranda in opposition to class certification. The plaintiffs requested and were granted until September 15, 1986 to respond to the defendants' memoranda and affidavits in opposition to class certification. Affidavits of two named plaintiffs in support of the motion for class certification were filed on September 2, 1986. Further, on September 9, 1986 Dodge filed a response to the plaintiffs' motion for class certification.

After a careful examination of the record in this case the court makes the following findings of fact relevant to the plaintiffs' motion for class certification. The plaintiffs' allegations include facts in support of

their claims, which extend back to at least 1977. Although it is not clear, the allegations indicate at least five distinct actions by Dodge which the plaintiffs assert created a vested interest in severance benefits.

The first action which is alleged to entitle the plaintiffs to severance benefits is the closing of a warehouse in 1977. None of the named plaintiffs were laid off in 1977. The next alleged closing or permanent discontinuance was when some machines called "Multimatics" were moved out in 1979 allegedly causing the small pulley product line to stop producing. None of the named plaintiffs were laid off in 1979. It is also alleged that in 1979 Dodge began moving out portions of the Gear Plant. However, the plaintiffs admit that all employees laid off at the time of any move in the Gear Plant during 1979 were recalled.

Some of the named plaintiffs were laid off in 1980 but were recalled no later than February 1981. There are no alleged closings or permanent discontinuances in 1980. Next in "late 1981" the second shift in the foundry was eliminated. Named plaintiff Mona Holdeman was laid off in November 1981, but she was not then nor had she ever worked the second shift in the foundry. Further, named plaintiffs, Wuscina, Parks, and Shaw were laid off in January 1982, as well as Mark and Dennis Van Bruaene. In May 1982 named plaintiff Fisher was laid off because his "superseniority" rights expired when his term as a "grievanceman" ended. There are no plant closings or permanent discontinuances directly related to any of those layoffs.

On July 6, 1982, Dodge announced, for the first time, that it would be closing the Gear Plant, and it anticipated that 100 employees would be idled. Then on November 3, 1982, Dodge announced a restructuring which involved closing the BCD Plant, and would idle approximately 380 employees. With the exception of Fisher none of the named plaintiffs worked in the plants which were closed, and Fisher admits that he was laid off as a result of the elimination of the second shift at the Foundry.

On July 12, 1982 Grievance Number 2039 was filed by local 1191. That grievance was filed on behalf of "all affected employees" and requested severance for all affected employees, "[s]ince dept and divisions are moving out of the plant." Dodge denied the grievance at steps 1, 2 and 3, and it went to the fourth step where Mr. Chlebowski, the staff representative of the International Union, became involved. While the grievance was still in step four Dodge announced the restructuring. At a November 9, 1982 "negotiating session" Mr. Chlebowski discussed the issue of a special early retirement program (SERP) and the company agreed to talk about it. The next "negotiating session" was held on November 17, 1982, and Dodge stated that any SERP offer was contingent on resolution of grievance # 2039. The Union made a counter offer to pay severance to all employees laid off in 1982, extend insurance benefits to laid off employees six months and SERP with six specific provisions. The sessions continued on November 18, 1982. However, Mr. Chlebowski, dissatisfied with the progress, walked out. The Union decided that their bottom line on severance was all employees laid off on or after July 6, 1982 because that was the date that Dodge announced the first plant closing. On November 19, 1982 Dodge agreed to pay severance pay to any employee laid off on or after July 6, 1982 and to extend insurance coverage for laid off employees to five months. With respect to SERP, the Company offered:

1. Window period through December 31, 1982.
2. Employee must be 55 with ten years of service.
3. No actuarial reduction.
4. Pension multiplier of $14.50, $15.00 in 1983.
5. $200 monthly supplement ages 55 to 62.
6. Major medical for retirees.

The Company also agreed to pay severance based upon the highest rate for dual rated jobs. The severance pay grievance would be withdrawn with or without prejudice based upon the settlement. After checking

with Mr. Chlebowski it was decided that that resolution of the grievance was agreeable. That resolution was reduced to writing and signed on December 8, 1982. Further, the negotiating teams signed the supplementary agreement on December 15, 1982.

The next event which is pertinent to the issue of class certification is the alleged refusal of the local to permit members, who had been on layoff less than two years, to vote to fill a vacancy in local 1191's vice president position. The record before the court indicates that seven alleged members of local 1191 were told they could not vote and only one of the seven is a named class member.

Following the December 8 and 15, 1982 agreements, some laid off employees attempted to get a second grievance filed on behalf of employees laid off before July 6, 1982. The Union did not process the grievance because it was allegedly filed untimely.

The defendants allege and it is not disputed that among the 90 remaining proposed class members there are at least fifteen different layoff dates. None of those dates are subsequent to the July 6, 1982 announcement of a plant closing and the dates allegedly reach back to 1979. The critical question in this case is whether the proposed class members had vested rights to severance pay. The collective bargaining agreement in force from November 1981 through December 15, 1982 provides as follows:

### ARTICLE XV

### SEVERANCE ALLOWANCE

SECTION 1—When, in the sole judgment of the Company, it decides to close permanently a department of a plant or substantial portion thereof and terminate the employment of individuals, an employee whose employment is terminated either directly or indirectly as a result thereof because he was not entitled to other employment with the Company under the provisions of ARTICLE VIII, Section 6 of this Agreement, and Section 2B below shall be entitled to a severance allowance in accordance with and subject to the following provisions:

SECTION 2—Such an employee to be eligible for a severance allowance shall have accumulated three (3) or more years of seniority as computed in accordance with ARTICLE VIII, Section 2 of this Agreement.

SECTION 6—Notwithstanding any other provisions of this Agreement an employee who would have otherwise been terminated in accordance with the applicable provisions of this Agreement and under the circumstances specified in Section 1 may, at such time, elect to be placed upon layoff status for thirty (30) days or to continue on layoff status for an additional thirty (30) days if he had already been on layoff status. At the end of such thirty (30) day period, he may elect to continue on layoff status or to be terminated and receive severance allowance if he is eligible to any such allowance under the provisions of this ARTICLE; provided, however, if he elects to continue on layoff status after the thirty (30) day period specified above, and is unable to secure employment with the Company within an additional sixty (60) days period, at the conclusion of such additional sixty (60) days period he may elect to be terminated and receive severance allowance if he is eligible for such allowance. Any Supplemental Unemployment Benefit payment received by him for any period after the beginning of such thirty (30) day period shall be deducted from any such severance allowance to which he would have been otherwise eligible at the beginning of such thirty (30) day period.

To prevail on a motion for class certification the plaintiff(s) must prove that the case is appropriately a class action *and* meets all the requirements of Rule 23 of the Federal Rules of Civil Procedure. *Accord, United Independent Flight Officers v. United Air Lines,* 756 F.2d 1274, 1284 (7th Cir.1985); *Valentino v. Howlett,* 528 F.2d 975, 978 (7th Cir.1976); *Klein v. A.G. Becker Paribas, Inc.,* 109 F.R.D. 646, 649

(S.D.N.Y.1986); *Joseph v. General Motors Corp.,* 109 F.R.D. 635, 638 (D.Colo.1986); *Berggren v. Sunbeam Corp.,* 108 F.R.D. 410, 411 (N.D.Ill.1985); *Zandman v. Joseph,* 102 F.R.D. 924, 927 (N.D.Ind.1984); *Minority Police Officers Ass'n v. City of South Bend,* 555 F.Supp. 921 (N.D.Ind. 1983); *Jones v. Blinziner,* 536 F.Supp. 1181, 1189 (N.D.Ind.1982); 7 A. Wright & C. Miller, *Federal Practice and Procedure* § 1759 (1972). In addition "for purposes of determining class certification, the allegations are taken as true and the merits of the complaint are not examined." *Allen v. Isaac,* 99 F.R.D. 45, 49 (N.D.Ill.1983), *citing, Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974); *see also, Eggleston v. Chicago Journeymen Plumbers, Etc.,* 657 F.2d 890, 895 (7th Cir.1981). "Eisen has not been interpreted so broadly, however, as to foreclose inquiry into whether plaintiff[s] [are] asserting a claim which assuming its merit will satisfy the requirements of Rule 23 as distinguished from an inquiry into the merits of plaintiff's particular individual claim." *Eggleston,* 657 F.2d at 8905, *citing, Doctor v. Seaboard Coast Line R. Co.,* 540 F.2d 699, 707 (4th Cir. 1976). Further, affidavits, depositions and other appropriate materials in the record may be utilized to determine the appropriateness of class certification. *General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 160, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982); *Eggleston,* 657 F.2d at 895; *Midwest Community Council v. Chicago Park Dist.,* 87 F.R.D. 457, 461 (N.D. Ill.1980). Although a court must not delve into the merits of the action it is "often necessary to analyze the substantive claims and defenses of the parties and the essential elements of those claims and defenses." *Joseph,* 109 F.R.D. at 638. Further, "there is a distinction between identifying the issues that the case will present, for purposes of determining whether the Requirements of Rule 23 have been met, and deciding those issues on the merits." *Id.* A meticulous analysis must be done and "actual, not presumed, conformance with Rule 23(a) remains, however, indispensable." *General Telephone,* 457 U.S. at 160, 102 S.Ct. at 2372, *accord, East Texas Motor Freight System, Inc. v. Rodriguez,* 431 U.S. 395, 405–406, 97 S.Ct. 1891, 1897–1898, 52 L.Ed.2d 453 (1977). The court has done an exhaustive analysis under Rule 23.

### Numerosity

Rule 23(a)(1) requires that the plaintiffs demonstrate that the proposed class "is so numerous that joinder is impracticable." Fed.R.Civ.P. 23(a)(1). The plaintiff's complaint alleged a class in excess of two hundred (200) but after discovery the number has been reduced to approximately ninety (90). A precise numerical figure is not required; a good faith estimate of the number of proposed class members will be sufficient. *Zandman,* 102 F.R.D. 927; *see also, Borowski v. City of Burbank,* 101 F.R.D. 59, 61 (N.D.Ill.1984). The defendants argue that since the layoff list has been exhausted either by recall or voluntary termination that there are no individuals left to become class members. The court disagrees. If the proposed class members were eligible for severance pay in 1982 and severance pay was withheld in breach of the collective bargaining agreement, then the breach of contract occurred and subsequent actions do not extinguish their claims based on that breach. Therefore, the court finds that the plaintiffs have met their burden under Rule 23(a)(1).

### Commonality and Typicality

"The commonality and typicality requirements tend to merge." *General Telephone,* 457 U.S. at 157 n. 13, 102 S.Ct. at 2370 n. 13. The same is true in this case. Therefore those two requirements will be discussed together. Fed.R.Civ.P. 23(a)(2) & (3) require that the plaintiffs must prove that "common questions of law or fact are held by all members of the proposed class," and that the claims or defenses of the representatives are typical of the claims or defenses of the class. *Zandman,* 102 F.R.D. at 928.

Under commonality the question is whether common issues predominate over issues affecting individuals. *Id.* The plaintiffs argue that the issues are common

to all proposed class members because all proposed class members were laid off, there were some plant changes somehow related to the layoffs, and they were not given severance pay. However, after a careful analysis of the record, it is clear that the critical issue which predominates this case is whether the individual proposed class members were eligible for severance pay.

The collective bargaining agreement which was in effect from December 1981 through December 15, 1982 contained the severance agreement set forth in the facts. The proposed members of the class have been laid off on at least fifteen (15) different dates. The critical predominate issue is whether the specific factual circumstances associated with each distinct layoff meet the requirements of Article XV Section 1 (Severance Allowance) of the collective bargaining agreement.

■ "A class action will not be defeated solely because of some factual variation among class members' grievances." *Patterson v. General Motors Corp.,* 631 F.2d 476, 481 (7th Cir.1980), *citing, Donaldson v. Pillsbury Co.,* 554 F.2d 825, 831 (8th Cir.), *cert. denied,* 434 U.S. 856, 98 S.Ct. 177, 54 L.Ed.2d 128 (1977). "A certifiable class action must arise from the same legal or remedial theory." *Id.* In this case, although the collective bargaining agreement is the legal foundation for the class claims, the facts surrounding the fifteen (15) different layoffs require fifteen (15) distinct interpretations of that legal foundation. Therefore, the court would be required to conduct fifteen distinct trials within this case. "Class relief is 'particularly appropriate' when the 'issues involved are common to the class as a whole' and when they 'turn on questions of law applicable in the same manner to each member of the class'." *General Telephone,* 457 U.S. at 155, 102 S.Ct. at 2369, *citing, Califano v. Yamasaki,* 442 U.S. 682, 700–701, 99 S.Ct. 2545, 2557–2558, 61 L.Ed.2d 176 (1979); *see also, East Texas Freight,* 431 U.S. at 403, 97 S.Ct. at 1896. In this case the critical predominate question of law is not "applicable in the same manner to each member of the class." *Id.* Consequently, the plaintiff has failed to meet the requirements of Rule 23(a)(1).

Under typicality the question is not whether the interests of the members are identical but whether there is a "sufficient homogeneity of interest." *Sosna v. Iowa,* 419 U.S. 393, 403 n. 13, 95 S.Ct. 553, 559 n. 13, 42 L.Ed.2d 532 (1975). "Typicality must be scrupulously sought such that claims and injuries of the representative assuredly are typical of the class he or she seeks to represent." *Allen v. Isaac,* 99 F.R.D. 45, 54 (N.D.Ill.1983), *citing, General Telephone Co. of Southwest v. Falcon,* 457 U.S. at 161, 102 S.Ct. at 2372; *East Texas Motor Freight,* 431 U.S. at 405–406, 97 S.Ct. at 1897–1898. The typicality requirement suffers from the same defect which commonality demonstrated.

### *Adequacy of Representation*

Fed.R.Civ.P. 23(a)(4) requires that the named plaintiffs' interest "coincide with other members of the class *and* [that] the class representative and his attorney are prepared to prosecute the action vigorously." *Zandman,* 102 F.R.D. at 933 (emphasis added). In light of the court preceding discussions it is not necessary to elaborate on this requirement.[1] The plaintiffs have failed to prove that Rule 23(a)(4) has been met in this case.

Accordingly, and for all the above reasons, it is the ORDER of the court that the plaintiffs' Motion for Class Certification be, and is hereby, DENIED. SO ORDERED.

---

**1.** After an exhaustive examination of the record the court finds that there are serious questions about whether the class representatives *and* their attorneys would adequately represent the proposed members.